**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Billy Edward DAVIS, Sr., and Dennis
Bates Fletcher, Defendants-
Appellants.**

**No. 72–1682.**

United States Court of Appeals,
Fifth Circuit.

Oct. 16, 1973.

As Amended on Denial of Rehearing
and Rehearing En Banc Denied

Nov. 19, 1973.

Certiorari Denied March 18, 1974.
See 94 S.Ct. 1573.

Ralph Elliott, Sherman, Tex. (court appointed) for Davis.

Mac Oyler, Oklahoma City, Okl., for Fletcher.

Roby Hadden, U. S. Atty., Dennis R. Lewis, Asst. U. S. Attys., Tyler, Tex., for plaintiff-appellee.

Before DYER, SIMPSON and MORGAN, Circuit Judges.

SIMPSON, Circuit Judge:

Billy Edwards Davis, Sr. and Dennis Bates Fletcher appeal from judgments of conviction after a joint jury trial for conspiracy, bank robbery, and interstate transportation of stolen money. The jury found Fletcher guilty of bank robbery, in violation of Title 18 U.S.C. Section 2113(d), of interstate transportation of stolen money, in violation of Title 18, U.S.C., Section 2314, and of conspiracy, Title 18 U.S.C. Section 371, to violate Section 2113(a) and (d). Fletcher was sentenced to concurrent confinement terms of 18, 10 and 5 years respectively, all sentences being imposed under the indeterminate parole statute, Title 18 U.S.C. Sec. 4208(a)(2). The jury found Davis guilty under a bank robbery count, Count II, Title 18 U.S.C. Section 2113(d), and under the conspiracy count, Count IV. He was not charged under Count III, the interstate transportation count. Davis was sentenced to concurrent confinement terms of 20 and 5 years respectively. He was also sentenced under Section 4208(a)(2). Count I charged both appellants with violation of Section 2113 (a) of Title 18 U.S.C., but was dismissed by the United States at trial. Appellants raise numerous contentions of error, but finding no prejudicial error demonstrated in the proceedings below, we affirm.

*The Right to Speedy Trial and to be Free From Excessive Pre-Indictment Delay*

Both Davis and Fletcher contend that the conduct of the government in causing or permitting delay of about twenty-four months between the commission of the offense and the commencement of their joint trial constituted either a denial of appellants' Sixth Amendment rights to speedy trial or pre-indictment delay violative of Fifth Amendment due process. An outline of the events preceding the trial and conviction below

is necessary to put these contentions in proper focus.

On January 16, 1970, the First National Bank of Tom Bean, Texas was robbed. On March 27, 1970, the grand jury indicted Davis and Fletcher, appellants here, as well as Carl W. Dennie, Jr. and Charlene Hightower, charging bank robbery in violation of Title 18 U.S.C. Sections 2113(a), (c), and (d). Arraignment on June 1, 1970 brought forth not guilty pleas from all defendants and trial was set for November 30, 1970. Dennie's motion for severance was granted at that time.

On November 23, 1970, the court dismissed the original indictment at the government's motion, so as to permit a charge of conspiracy to be brought.

On April 16, 1971, the grand jury re-indicted Davis and Fletcher, along with Dennie, with Robert Reno Schneider named as a co-conspirator but not indicted. On May 10, 1971, Davis was arraigned and pled not guilty. On that date Dennie entered a plea of guilty to the conspiracy count. On May 19, Fletcher pled not guilty, requested and was allowed 30 days for filing preliminary motions. On June 11, Davis moved to dismiss on grounds of the denial of speedy trial and Fletcher filed a similar motion on June 21. Trial was set for October 18, 1971, but was continued on Davis' motion for continuance therefor filed on September 16, 1971. Subsequently, after trial date was set for January 17, 1972, Davis' second motion for continuance was filed on December 15, 1972. Trial was then reset for the week of January 24, 1972. Actual taking of testimony commenced on February 4, 1972.

Appellants both assert that the delays involved, including the dismissal of the first indictment, was unnecessary and prejudicial, and constituted a denial of their rights to speedy trial, or in the alternative prejudicial pre-indictment delay. Both contentions are rejected.

■ The right to a speedy trial as guaranteed by the Sixth Amendment

and implemented by F.R.Crim.P. 48 does not arise until prosecution is instituted against the accused, either through arrest, indictment, or information. Absent a showing of extreme prejudice amounting to a Fifth Amendment denial of due process, the commencement of prosecution is controlled exclusively by the applicable statute of limitations. United States v. Marion, 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468; United States v. Judice, 5 Cir. 1972, 457 F.2d 414. The following from *Marion* indicates the parameters of impermissible pre-indictment delay:

". . . it is appropriate to note here that the statute of limitations does not fully define the appellee's rights with respect to the events occurring prior to the indictment. Thus, the Government concede[d] that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellee's rights to a fair trial and that the delay was a [purposeful] device to gain tactical advantage over the accused." 404 U.S. at 324, 92 S. Ct. at 465, 30 L.Ed.2d at 480–481.

We have considered the pre-indictment delay in this case including weighing of the time of the second indictment and the action of the government in dismissing the first indictment against appellants. The requisite showing of prejudice is absent.

As regards the delay between the second indictment and trial, we apply the fourfold test of Barker v. Wingo, 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, in determining whether Sixth Amendment rights to a speedy trial were violated.

■ The elapsed time between the second indictment on April 16, 1971 and trial was nine or ten months. In Barker v. Wingo, supra, the Supreme Court adopted a balancing test for determining whether a defendant's right to speedy trial has been violated. Under that test

the conduct of the prosecution and the defendant is balanced, on an *ad hoc* basis, giving particular attention to four factors: (i) length of delay, (ii) the reason for the delay, (iii) the defendant's assertion of his right, and (iv) prejudice to the defendant. 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 116–117. We do not believe that the period that elapsed between indictment and trial constituted an unreasonable delay in the circumstances of this case. This modest delay of considerably less than a year is not inappropriate per se in a case of this type since preparation of a complex interstate conspiracy case involving multiple defendants may well require more time before trial than prosecution of a single street crime, Barker v. Wingo, supra, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 116–117. While both defendants made early demands for speedy trial as to the second indictment, Davis' counsel twice requested continuances: on September 16, 1971 as to the trial set for October 18, 1971, and again on December 15, 1971 as to a trial date of January 17, 1972. Each continuance was granted by the trial judge for other assigned reasons, the first until further order because Davis' co-defendant Dennie was scheduled to go to trial in the state court for murder on October 18, 1971, and the second for one week to permit the trial judge to sit as a member of a three-judge statutory court, neither motion for continuance was withdrawn by Davis' counsel. While Fletcher did not seek any continuance following his initial demand for speedy trial, he made no effort to reassert that demand or to seek severance of his case upon the trial court's granting of the continuances noted above.[1] The delay here was at least partially sought by the defendant Davis, and in any case is insignificant time wise.

We must examine finally both appellants' extensive claims of prejudice allegedly caused by the delay in this case.[2]

Fletcher alleges prejudice resulting from pre-trial incarceration, the stigma of being an accused, dimming of witness memory, and inability to locate key defense witnesses. We note Fletcher spent only 13 or 14 days in jail as a result of the charges involved here; whatever additional incarceration he endured during the pre-trial period was the result of a state conviction in Oklahoma. Incarceration on this state charge diminishes practically to the vanishing point his claim of stigma arising from failure to try him promptly on the charges in the instant case. Dimming of witness memory is not shown. Both Fletcher and his principal alibi witness Charlene Hightower vividly recalled and testified to details of events around the time of the alleged crime.

Davis also makes numerous assertions of prejudice resulting from the pre-trial delay here. Davis was never incarcerated prior to trial as a result of the charges in this case. His imprisonment during the pre-trial period was in consequence of other convictions.

Davis claims prejudice also as a result of a lost witness, Bob Beckles. His witness Richard Murray testified at trial that Davis had never told government witness Horton that Davis had robbed a bank. Both Horton's and Murray's testimony concerned Davis' statements to them when the three of them were incarcerated together at the Oklahoma City Jail. Davis' missing witness Bob Beckles would only have offered cumulative testimony on this point.

The missing witnesses Chitwood and Little would have testified cumulatively to facts brought out by Davis' witness Thomas concerning Davis' claimed presence at the May Ten Cafe at the time of the crime. Davis also maintains that the missing witnesses Hermann Williams and Bruce Hayes would have corroborated Davis' own testimony that he travelled to and from Dallas in an Econoline

---

1. We do not find it necessary in the context here to comment upon the effect of delay caused by one defendant upon a speedy trial demand asserted by a co-defendant.

2. These claims relate both to the speedy trial claim and to the related claim of pre-indictment delay, discussed infra.

Van, thus negating his presence in the 1969 Dodge with his alleged co-conspirators. There was evidence, however, from which the jury was justified in concluding that Davis' self-serving testimony as to this point was false. Evidence was presented to show that Davis, after first telling the FBI that he had gone to Dallas in the Econoline Van, then changed his story, stating he went in a Plymouth Barracuda.

Davis' claim that his memory was dimmed by the pre-trial delay is refuted by his own testimony at trial which was lucid and replete with factual details.

■ The appellants contend that delay preceding the second indictment constitutes a denial of fundamental due process, see United States v. Marion, supra. Appellants assert that the dismissal of the first indictment under F.R. Crim.P. 48(a)[3] barred their subsequent re-indictment and prosecution on the second indictment, an argument made and rejected in United States v. Chase, 4 Cir. 1967, 372 F.2d 453:

> "It is true that Rule 48(a) states that a United States Attorney may, by leave of court, file a dismissal of an indictment 'and the prosecution shall thereupon terminate,' but the authorities are replete that such a dismissal is without prejudice. Mann v. United States, 113 U.S.App.D.C. 27, 304 F. 2d 394, cert. den. 371 U.S. 896, 83 S. Ct. 194, 9 L.Ed.2d 127 (1962); United States v. Becker, 221 F.Supp. 950 (W.D.Mo.1963); United States v. Shanahan, 168 F.Supp. 225 (S.D.Ind. 1959); United States v. Bowles, 183 F.Supp. 237 (D.Me.1958); United States v. Garces Dorrego, 17 F.R.D. 340 (D.Puerto Rico 1955). According to the rule, it is only when a trial has begun and jeopardy has attached that a dismissal may not be filed without a defendant's counsel." 372 F.2d at 463–464.

See also, United States v. Manetti, D. Del.1971, 323 F.Supp. 683, 691. It is precisely because a dismissal under Rule 48(a) does not bar a subsequent prosecution that the rule requires the consent of the court. The trial court did not abuse its discretion in dismissing the first indictment under Rule 48(a). Cf. United States v. DeLeo, 1 Cir. 1970, 422 F.2d 487.

Appellants raise the specter that failure to hold that the Rule 48(a) dismissal in this case barred subsequent prosecution will create a situation analogous to that which the Supreme Court found offensive in Klopfer v. North Carolina, 1967, 386 U.S. 213, 87 S.Ct. 988, 18 L. Ed.2d 1. In *Klopfer*, the Court condemned a North Carolina procedure which permitted the prosecutor to take a nolle prosequi with leave, a procedure which allowed the defendant to remain at liberty but which also permitted the prosecutor to return the case to the trial calendar at any time. The crucial difference between the procedure condemned in *Klopfer*, supra, and the effect of a Rule 48(a) dismissal is that under the invalid North Carolina procedure the statute of limitations was tolled, keeping alive the possibility of an eventual prosecution in the distant future. The prime fault of North Carolina procedure was its denial to the defendant of his primary protection against pre-indictment or post-indictment delay, the statute of limitations. United States v. Marion, supra. In contrast, dismissal under Rule 48 does not impair the protection afforded by the statute of limitations. See the federal limitation statutes, Title 18 U.S.C. Sections 3281 through 3291. The point raised is devoid of substance.

We turn to appellants' claim of prejudicial pre-indictment delay. Initially we observe that there is no showing that the delay before the second indictment,

---

3. F.R.Crim.P. 48(a) provides:
 Rule 48. Dismissal
 (a) By Attorney for Government. The Attorney General or the United States attorney may by leave of court file a dismissal of an

indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

resulting in part from the dismissal of the first indictment, was a purposeful device to "gain some tactical advantage over [the accused] or to harass them" United States v. Marion, supra, 404 U.S. at 325, 92 S.Ct. at 466, 30 L.Ed.2d at 481. The allegations of pre-indictment delay were carefully examined by the trial court. Co-conspirator Robert Reno Schneider did not cooperate with the government until after the first indictment was dismissed. When it became apparent that Schneider would testify he was promptly brought before the grand jury which then returned the second indictment. Appellants' claims of prejudice resulting from delay are relatively insubstantial. No loss of a key defense witness or other substantial prejudice is shown. Prosecutorial overreaching is absent. We have recently pointed out that ". . . all practiced trial lawyers are well aware that the attrition from such delay is more damaging to the prosecution's case than to that of the defense. This will be so as long as the prosecution has the burden of proof." United States v. Judice, 5 Cir. 1972, 457 F.2d 414, 418 Prejudice so substantial as to amount to a denial of due process of law is not made to appear.

*Admission of the Stolen Travellers Checks*

The appellant Fletcher urges that error occurred in the admission in evidence at trial of travellers checks taken in the robbery of the First National Bank of Tom Bean. The several counts of the indictment alleged only (1) the robbery of money from the bank, (2) a conspiracy to take money from the bank by force and violence and by use of dangerous weapons, and (3) the interstate transportation of $32,789 in stolen money by Fletcher from Tom Bean, Texas to Oklahoma City, Oklahoma. Fletcher contends that he was prejudiced by testimony and proofs concerning $10,420 in travellers checks missing in the robbery. Some were found in his possession at the time of his arrest, numerous others came in for payment to the Republic Na-

tional Bank of Dallas, which had consigned them to the Tom Bean Bank. According to the government's evidence, the latter were negotiated by a witness Sandra Chapman who had received them from Fletcher. Fletcher's counsel objected to this evidence and made several motions for mistrial on the ground of a material and prejudicial variance from the indictment, by allowing a crime not charged to be proven at trial. Counsel both below and here cited Stirone v. United States, 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252; United States v. Bursten, 5 Cir. 1971, 453 F.2d 605, in an effort to show that Fletcher was tried and convicted for an uncharged crime, and that this was in effect an alteration of the indictment. This reliance is misplaced. The jury was not permitted to view the theft of the travellers checks as a separate crime.

Instead, this evidence was properly received under well recognized evidentiary considerations as tangible documentary evidence connecting Fletcher to the bank robbery, the very crime with which he was charged. Unexplained possession of recently stolen property may be shown to permit an inference by the finder of fact that the possessor participated in the theft of the property. United States v. Cook, 5 Cir. 1969, 419 F.2d 1306; Orser v. United States, 5 Cir. 1966, 362 F.2d 580. Permitting a jury to draw such an inference has been recently sustained as proper by the Supreme Court in Barnes v. United States, 1973, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380. Property admissible under this rule is by no means limited to property charged in the indictment to have been stolen. It may also be other property which was taken in the same theft or robbery. United States v. Marchbanks, 5 Cir. 1972, 469 F.2d 72. The travellers checks and the evidence concerning them were properly received under appropriate instructions to the jury concerning the inference permissible from the possession of property recently stolen. Barnes v. United

States, supra. Error was not committed in this respect.

### Co-Conspirator's Testimony as to Guilty Plea

A key witness against both appellants was Carl W. Dennie, Jr., who had been charged as a co-conspirator and principal in the same indictment in which appellants were charged. Prior to the trial, Dennie was allowed to plead guilty to the conspiracy count. On several occasions during the trial the jury was apprised of Dennie's guilty plea. The subject of Dennie's prior guilty plea arose on at least four different occasions— first during the voir dire examination of the jury panel, again during the prosecutor's opening statement, and twice during the government's direct examination of Dennie.

Convictions of co-defendants may not be used to prove the guilt of persons charged with the same crime, Leroy v. Government of the Canal Zone, 5 Cir. 1936, 81 F.2d 914, and it is error to instruct a jury that it may consider the fact that co-defendants have pled guilty, Babb v. United States, 5 Cir. 1955, 218 F.2d 538. But a cautionary jury instruction is usually adequate to dispel the prejudice inherent in a co-defendant's testimony that he has pled guilty or been convicted of the very offense for which the defendant is charged. United States v. Baete, 5 Cir. 1969, 414 F.2d 782. In United States v. Harrell, 5 Cir. 1970, 436 F.2d 606, we cautioned as to proof at trial of a co-conspirator's guilty plea:

> "Again, we decide only the case before us. But we think that the evidentiary purpose ordinarily to be served by proof of a co-defendant's plea of guilty is so shadowy, so insubstantial that it would be the better practice in run-of-the-mill cases to exclude such proof altogether." 436 F.2d at 617.

In *Harrell*, the trial court gave no cautionary instruction and the government claimed no evidentiary purpose whatsoever in the introduction of the co-conspirator's guilty plea. Both this Court, United States v. Harrell, supra; United States v. Baete, supra, and other courts, e. g., United States v. Del Purgatorio, 2 Cir. 1969, 411 F.2d 84; United States v. Freije, 1 Cir. 1967, have stressed as controlling the existence and adequacy of the trial court's cautionary instructions in a situation where the jury is made aware of a codefendant's guilty plea entered prior to giving evidence for the government.

Both Davis and Fletcher objected when Dennie was first questioned about whether he had entered a plea of guilty in this case. The trial court instructed the jury as follows:

> "Ladies and gentlemen, anything that this witness [Dennie] may have said at the time that he entered his plea of guilty would not be binding upon the Defendants in this case, and you may not consider it as evidence against them, since it would be hearsay as to them."

Again in his closing instructions the trial judge cautioned the jury that each defendant is entitled to have his guilt or innocence determined by his own acts. We are unwilling to hold that the introduction of Dennie's guilty plea was reversible error within the context of this case, although we reiterate our *Harrell* caveat. We do not find here the special aggravated circumstances found in *Harrell* which would require reversal because of the introduction of the guilty plea. United States v. Baete, supra, 414 F.2d at 783.

### Exhibition of Fletcher's Photo to the Jury

Fletcher asserts that error occurred in the exhibition of a photograph of him to the jury. The questioned picture was a composite of two separate photographs —one full face and one in profile. Along with eight others this photograph had previously been shown to the trial judge with the jury out of the courtroom in order for him to determine if FBI special agent Wilkinson had displayed the photographs to witness Dan

Fagan in an impermissibly suggestive manner. The judge had ruled that the photograph spread was not impermissibly suggestive and that there was not a substantial likelihood of irreparable misidentification. See Simmons v. United States, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247.

After this ruling, counsel for Davis attempted to exhibit the photographs to Fagan in the jury's presence. At the request of Fletcher's counsel the judge again retired the jury; whereupon Fletcher's counsel objected to the display of Fletcher's photograph to the jury on the ground that the "mug shot" character of the composite would imply that Fletcher had either a prior criminal record or an arrest record. The trial judge ordered that the top of the photograph showing identification numbers be removed, and specifically directed Davis' counsel not to highlight the photograph of Fletcher in his cross-examination of Fagan. The judge further ordered that the record show that the photographs were placed on the jury rail facing away from the jury when Fagan came down from the witness stand to identify them. Fletcher's motion for a mistrial was overruled.

Fletcher cites United States v. Harmon, 4 Cir. 1965, and Barnes v. United States, 1966, 124 U.S.App.D.C. 318, 365 F.2d 509 for the proposition that a "mug shot" may not be shown to a jury because such a photograph implies that the accused has either a prior criminal record or a prior arrest record, and thus raises the issue of the character of the accused without his having placed his character in evidence.

*Harmon* concerned a picture exhibited to the jury which bore identification numbers. A government agent had already suggested a prior conviction to the jury, and the court found that there was no proper evidentiary purpose for the introduction of the photograph. Also, Harmon did not thereafter place his character in issue by taking the stand at any time during trial. The *Harmon*

court relied on all of these factors in deciding that prejudice occurred in exhibiting the photograph to the jury.

In *Barnes,* the identifying numbers on the photograph were merely masked over with adhesive tape before the photograph was exhibited to the jury. The *Barnes* court felt that the masking tape emphasized that something was being hidden, which may have heightened the importance of the picture in the minds of the jury.

Here, in contrast, the trial judge carefully removed any identifying marks from the pictures, and the pictures themselves were not highlighted by the testimony. Later in the trial, Fletcher took the stand and testified as to his prior felony conviction. The effect of this later testimony was to obliterate any possible prejudicial effect upon the jury or the prior exhibition of the composite photograph. Cf. United States v. Silvers, 7 Cir. 1967, 374 F.2d 828. Reference to or use by a defendant of an erroneously admitted line of evidence ordinarily cures or waives error. Jarabo v. United States, 1 Cir. 1946, 158 F.2d 509, 514; United States v. Bramson, 2 Cir. 1943, 139 F.2d 598, 600, cert. denied sub nom., North v. United States, 1944, 321 U.S. 783, 64 S.Ct. 636, 88 L.Ed. 1075.

*The In-Court Identification by Lackey*

Davis and Fletcher both assert that the in-court identification of them by government witness Claude Lackey was tainted by a pre-trial photographic display. As required by our decision in United States v. Sutherland, 5 Cir. 1970, 428 F.2d 1152, the trial judge conducted an extensive examination of the circumstances involved in the photographic spread and Lackey's identification. He concluded that under Simmons v. United States, supra, the previous photographic displays had not been impermissibly suggestive and that there was no substantial likelihood of irreparable misidentification, and permitted Lackey's positive identification of both appellants as principals in the bank robbery to go to the jury. Error is not shown in the

procedures employed by the trial judge or in his finding of admissibility.[4]

 Davis and Fletcher both complain also that Lackey's in-court identification was tainted because Lackey observed both accused in custody outside the courtroom preceding trial as well as in the courtroom in circumstances that clearly indicated that they were the defendants in this case. Lackey did not make positive identification of the defendants until he took the stand to testify. It was proper cross-examination for defense counsel to develop the details of these prior observations as affecting the credibility of Lackey's in-court identification. Nevertheless, such observation of the defendants by the witness immediately prior to the witness' trial testimony differs considerably from identifications made prior to trial with attendant requirement of procedures calculated to diminish the risk of misidentification. United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Simmons v. United States, supra. The point raised is not substantial.

### Failure to Disclose Statements of Prosecution Witnesses—the "Brady" Rule

 Fletcher by pre-trial motion sought discovery of any previous statements in the government's possession made by Carl Dennie concerning Fletcher's participation or lack of participation in the crime. The court made an in camera inspection of the material in the government file and denied the motion. The question was renewed in the absence of the jury when Dennie took the stand. The court then denied the request but nevertheless made all Dennie's statements available to Fletcher's counsel. The contention that Brady v. Maryland, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 215, was somehow violated is incomprehensible. Brady applies to suppression. Here the exact opposite, disclosure, was required.

 Equally without merit is Fletcher's accompanying claim that Brady's teachings required the production of statements in the government's file implicating others in the bank robbery. None of this material was in any sense exculpatory of· Fletcher, the primary target of Brady based motions. This was fully developed at the pre-trial hearing on Fletcher's motion.

### Evidentiary Rulings

Fletcher questions a number of evidentiary rulings at trial. We find no merit in this attack, but discuss several of the closer points raised.

Fletcher asserts prejudicial error occurred when FBI special agent Harvey was allowed to read to the jury a report Harvey had previously prepared. The report dealt with an interview by Harvey with Fletcher a year and a half prior to trial, on July 10, 1970, and was prepared from rough notes made by Harvey during the interview. Harvey testified that he had destroyed the original field notes following the preparation of the smooth report for his file.

Fletcher asserts that while it was proper for the witness to refresh his recollection from the reports, the act of reading them to the jury constituted impermissible secondary evidence, citing ·Gaines v. United States, 1965, 121 U.S. App.D.C. 213, 349 F.2d 190; Young v. United States, 1954, 94 U.S.App.D.C. 62,

---

4. In the *Sutherland*-type hearing the trial judge carefully considered the opportunities for observation which Lackey had at the time of the crime, including the effect of Lackey's advanced age upon his powers of observation, as well as the circumstances surrounding the photographic displays with a view to determining whether and to what extent government agents made impermissible suggestions to the witness during the display.

Mr. Lackey was president of the bank at the time of the robbery. He testified that Davis and Fletcher came to his home, tied up his wife at gunpoint, and forced him to drive to the bank and open its vault. Lackey's testimony was strongly supportive of the government's case and the trial judge took commendable care in determining that Lackey's in-court identification was untainted.

214 F.2d 232; Rosenthal v. United States, 8 Cir. 1918, 248 F. 684. These cases are inapposite. They deal rather with a government attorney's reading in the jury's presence a hostile witness' prior inconsistent statements, under the guise of refreshing the witness' recollection.

The witness Harvey in this case read from a paper prepared by him. The trial judge in overruling an objection stated: "I think the jury understands—if not, I will tell you that the witness is relating an interview which he alleges that he had with the defendant Fletcher and that the defendant Davis was in no wise connected with it."

■ We have dealt with a very similar situation in this language:

"We have carefully considered the contention of the appellants that the trial court erred in permitting the principal prosecution witness to testify extensively from a statement made up by him from his original field notes, thereafter destroyed. It is clear from a reading of the transcript of the trial that the witness testified that his recollection was refreshed by the written statement. We, therefore, conclude that the trial court did not err in permitting his testimony to be received in evidence even though on some occasions he stated that without reference to the written statement he could not recall all of the events that had transpired." Redfearn v. United States, 5 Cir. 1967, 375 F.2d 767.

The previously prepared statement is itself admissible as past recollection recorded if the witness had personal knowledge of the recorded events, and if the witness knows that the statement was accurate at the time that it was prepared. Papalia v. United States, 5 Cir. 1957, 243 F.2d 437. See also, United States v. Booz, 3 Cir. 1971, 451 F.2d 719, 725; United States v. Riccardi, 3 Cir. 1949, 174 F.2d 883, 887–888, cert. denied, 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746; Putman v. Moore, 5 Cir. 1941, 119 F.2d 246; United States v.

Kelly, 2 Cir. 1965, 349 F.2d 720, 770, cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544.

■ Harvey testified that he remembered the conversation and that the prepared statement was accurate when made. No error occurred when the witness read from the statement.

■ Fletcher raises the point that government counsel improperly interrogated government witnesses as to prior inconsistent statements. In the event that a party, government or defense, is surprised by one of its witnesses, it is entitled to impeach its own witness by questions concerning the witness' prior inconsistent statements. United States v. Dobbs, 5 Cir. 1971, 448 F.2d 1262. Such impeachment is of course permitted only for the purpose of cancelling the adverse effect of surprise, and the government may not use the prior inconsistent statement for the purpose of supplying anticipated testimony. This would be tantamount to permitting the use of hearsay. United States v. Dobbs, supra; Slade v. United States, 5 Cir. 1959, 267 F.2d 834; Culwell v. United States, 5 Cir. 1952, 194 F.2d 208; Young v. United States, 5 Cir. 1938, 97 F.2d 200. On the other hand if the witness admits the truth of the prior inconsistent statements then the witness in effect adopts the prior statement as his present testimony, given under oath and subject to cross-examination. The hearsay element is no longer present. Feutralle v. United States, 5 Cir. 1954, 209 F.2d 159, 161–162.

■■ The challenged impeachment below of the witness Keene merely had the effect of neutralizing his prior testimony. No new matter was introduced. The impeachment of the witness Dennie was similarly limited to overcoming the effect of his previous testimony. As to Dennie, the record indicates further that later in his testimony he repudiated his first testimony and testified in accordance with his prior statement, thereby adopting the prior statement as his present testimony. The effect was to

remove any possible prejudice arising from government efforts to impeach its own witness. In the circumstances present no error occurred through government impeachment of its own witnesses. Pinder v. United States, 5 Cir. 1964, 330 F.2d 119.

Fletcher objects to the testimony of several witnesses concerning declarations made by co-conspirator Dennie when Fletcher was not present. John D. Keel testified concerning an automobile transaction with Dennie on January 20, 1970. Carol Dennie West, Dennie's ex-wife, testified about a conversation with Dennie on January 16, 1970. Carl Dennie, Sr. testified concerning a conversation with co-conspirator Dennie on January 17, 1970.

■ Generally in a federal conspiracy trial the exception to the hearsay rule which allows the admission into evidence against one conspirator of proof of out of court statements or acts of a co-conspirator applies only to declarations or acts made in the course of and in furtherance of the conspiracy. Lutwak v. United States, 1953, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593; Krulewitch v. United States, 1949, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790. The government's position at trial was that the conspiracy lasted until January 20, 1970, when the getaway car was disposed of. The testimony of witness Keel concerned Dennie's disposition of that car.

■ The indictment alleged the life of the conspiracy as from December 1, 1969 until January 20, 1970. While mere concealment of the crime is not furtherance of the conspiracy for the purposes of the hearsay exception, Krulewitch v. United States, supra, "acts of concealment done in furtherance of the main criminal objectives of the conspiracy" are in furtherance of the conspiracy for purposes of the co-conspirator exception to the hearsay rule. Grunewald v. United States, 1957, 353 U.S.

391, 405, 77 S.Ct. 963, 974, 1 L.Ed.2d 931, 942. It has been held that disposition of the stolen property, or disposition of other instrumentalities of the crime, are acts done in furtherance of the conspiracy. Atkins v. United States, 9 Cir. 1962, 307 F.2d 937; Feyrer v. United States, 9 Cir. 1963, 314 F.2d 110. We find support in the record for the trial court's conclusion that the conspiracy did not end until the disposition of the car on January 20, 1970. Hence Dennie's acts and declarations on that date occurred during the pendency of the conspiracy, and were properly admitted under the co-conspirator exception to the hearsay rule, as done in furtherance of the objects of the conspiracy.

■ The government also called as a witness James Horton, who had been incarcerated with defendant Davis in the Oklahoma City Jail in February, 1970. Horton testified to inculpatory statements which Davis made to him over a ten day period, including the details of Davis' participation in the bank robbery. Government counsel was scrupulously careful not to elicit the names of any participants other than Davis from Horton. Additionally, the trial court at Fletcher's request instructed the jury that Horton's testimony was to be considered only against Davis, and not against Fletcher. Because Davis' inculpatory statements to Horton were sanitized of reference to Fletcher, this appeal presents no problem under Bruton v. United States, 1968, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, despite Fletcher's contrary contention.

### Prosecutional Comments on Witness Veracity

Appellant Fletcher urges that the U.S. attorney in closing argument improperly offered his own opinion on the veracity of government witnesses. The argument was objected to when made, clearly preserving the point for appellate review. We set forth in the margin in extenso the argument, the objection and the court's ruling thereon.[5]

5. MR. KNOWLES: Ladies and gentlemen, there certainly are other ways, and I think

we have other evidence here to show that. I did not mean to infer that that was the

In Gradsky v. United States, 5 Cir. 1967, 373 F.2d 706, this Court held it impermissible and reversible error for the prosecutor to state that " . . . the government representatives don't put a witness on the stand unless there appears to be some credibility, until he appears to be a truthful witness." 373 F.2d at 710 (emphasis deleted). The rule is that it is improper for the prosecutor to indicate that he can vouch for the credibility of a government witness because of facts personally known to the prosecutor but not introduced into evidence. Hall v. United States, 5 Cir., 1969, 419 F.2d 582–586; McMillan v. United States, 5 Cir. 1966, 363 F.2d 165, 168; Dunn v. United States, 5 Cir. 1962, 307 F.2d 883, 885. The prosecutor should not, on the basis of claimed superior knowledge, endorse the veracity of a witness.

But this is not the situation in the instant case. Here, rather, the prosecutor commented upon the testimony of the government witnesses in light of the record. His comments did not rise to the level of forbidden endorsement of a government witness. Cf. Lawn v. United States, 1958, 355 U.S. 339, fn. 15 at 359, 78 S.Ct. 311, fn. 15 at 323, 2 L.Ed. 2d 321, fn. 15 at 335. Additionally, in this case, when the objection was made the trial judge promptly and correctly pointed out to the jury that "what all the lawyers say here are mere argument. What the lawyers say is not evidence." Note 5, supra.

*Dennie's Testimony as to Threats Against Him by Fletcher*

Fletcher urges that it was error for the court below to allow the government witness and alleged co-conspirator, Carl W. Dennie, Jr. to testify to threats made against him by Fletcher, and also by other penitentiary inmates. As a squealer, or "stoolie", prison pressures against his testifying would fit the usual and to be expected pattern. The court below was extremely careful to exclude all hearsay factual statements, and threats by others than Fletcher, by full preliminary disclosure of the proposed testimony out of the jury's presence. We do not perceive error in the procedures followed. Certainly, as to direct threats against Dennie by Fletcher, the testimony was competent, and was relevant as indicating

only evidence, but as an attack on our witnesses, I feel that I should tell you that the witnesses that we used are the witnesses that we found to be involved in the crime. We're not free to go out and bring in any witnesses. We have to bring in the people that were there, the people that saw it, the people that were on the scene, the people that know who was there that know what was said and know what happened, and that is exactly what we did.

In addition to that, of course, we brought in Mr. Horton. There has been a lot of stuff said here about Mr. Horton. He's been called various things by counsel for the defense. He's been called an informer, stool̂ pigeon, various of these terms, and I submit to you, ladies and gentlemen, that what Mr. Horton is, is a tattletale. That's exactly what he has done, but now, tattletales don't necessarily tell lies, Mr. Horton told the story— he said on the stand, "I don't know if this is the truth, I'm not saying this is the truth. I wasn't there. I wasn't at the bank robbery. This is what Mr. Davis told me, though," and that's all he came up here to do. He came up here to tattle. That's ex-

actly what he did. He came up here and told you, "Mr. Davis told me this." When Mr. Davis told him that, he ran to the F.B.I. and told it. That's true, but it is true, ladies and gentlemen. The fact that Mr. Horton may have been an informer doesn't mean that he didn't tell the truth, and the fact that Mr. Schneider got immunity doesn't mean that he didn't tell the truth. It is all the more reason that he would tell the truth. He couldn't be prosecuted for the crime. That could be the biggest laugh he could get if he actually robbed the bank himself, if we granted him immunity so we wouldn't prosecute him. Then he could come in and say, "Sure, I robbed the bank," and he couldn't be touched, but he didn't do that. He told the truth.

MR. OYLER: Your Honor, we are going to object to that. This is up to the jury to determine who told the truth, up to the prosecutor to tell _ _ _ _.

THE COURT: Well now, you are making an argument, as I understand it. Ladies and gentlemen of the jury, what all the lawyers say here are mere arguments. What the lawyers say is not evidence."

Fletcher's animus. See generally, 21 Am.Jur.2d Evidence, Sec. 293, Annotation, 62 A.L.R. 136. Cf. Silkworth v. United States, 2 Cir. 1926, 10 F.2d 711.

### Credibility of Government Witness

 Fletcher also makes an entirely meritless argument that the testimony of Dennie was so inherently incredible that the trial judge should not have permitted his testimony to be considered by the jury, but should have stricken it in its entirety on his motion. He attempts to reinforce this position by coupling it with objections to a jury charge given at the government's request to the effect that the government is not bound by the testimony of its witnesses in its entirety.[6] It is the function of the jury, not the court, to determine the credibility of witnesses. The jury's verdict should be sustained if there is substantial evidence, viewed in the light most favorable to the government, to support it. Glasser v. United States, 1942, 315 U.S. 60, 80; 62 S.Ct. 457, 469, 86 L.Ed. 680, 704; United States v. Fuentes, 5 Cir. 1970, 432 F.2d 405, 408. Despite numerous inconsistencies and some contradictions in Dennie's testimony the trial court did not err in allowing the jury to consider that evidence, Pierce v. United States, 1930, 252 U.S. 239, 251–252, 40 S.Ct. 205, 210, 64 L.Ed. 542, 548; Williamson v. United States, 5 Cir. 1966, 365 F.2d 12, 14; Gorman v. United States, 5 Cir. 1963, 323 F.2d 51, 52, and the jury instruction in the context of this trial, is not shown to have been improper.

### Refusal to Give Jury Instruction Requested by Davis

 Davis urges that the trial judge should not have refused to give the following requested charge to the jury:

The evidence discloses that the defendant, BILLY EDWARD DAVIS, SR., has been locked up and imprisoned ever since he was charged herein. There is evidence that he has been and is destitute, indigent, and in percunious (sic) circumstances. On the other hand, the evidence discloses that during this same period of time investigative forces and prosecutorial efforts of the Government have been at almost constant attendance.

You are instructed that you may take into consideration the relative disparity and ability as between the Government and the defendant to discover and present evidence. In other words, the Government, circumscribed by the circumstances surrounding the defendant, may have been able to present evidence of less cogency and persuasion, than the defendant, emancipated [sic] and clothed with the resources of the Government, may have been able to adduce evidence of great cogency and persuasion, and you are instructed that you may take these factors into consideration in determining the guilt or innocence of the defendant, BILLY EDWARD DAVIS, SR.

In urging his right to some kind of instruction on the relative abilities of the government and the defense to prepare for trial, Davis cites Stewart v. United States, 1969, 135 U.S.App.D.C. 274, 418 F.2d 1110 and McAbee v. United States, 1961, 111 U.S.App.D.C. 74, 294 F.2d 703. These cases are inapposite. They deal with the "missing witness" instruction, that is to say the instruction respecting the unfavorable inference to be drawn when a party fails to produce a witness whose testimony would elucidate a transaction when the witness is peculiarly within that party's power to produce. The instruction is argumentative in content, more appropriate to a lawyer's jury argument than

6. The full text of this instruction was:
"You are instructed that the government is not bound by the testimony of the witnesses which it calls to the stand in a criminal case. The government is not always in a position to choose its witnesses. The government may properly strive to prove that the truth is the opposite of what its witness says. The government may offer part of what a witness says as the truth and contend against the part that it does not consider true."

to a court's jury instructions as to the law. Absent compelling authority, we decline to require that it be given.

### Conclusion

Careful review of all the points raised on appeal by industrious and ingenious counsel fails to demonstrate that harmful error occurred in the trial below.

Affirmed.