IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned On Briefs March 29, 2011

## SHANNON LEE JARNIGAN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamblen County**
**No. 08CR679   John Dugger, Judge**

_____

**No.  E2010-01254-CCA-MR3-PC - Filed August 24, 2011**

_____

A Hamblen County Jury convicted Petitioner, Shannon Lee Jarnigan, and her co-defendants of one count each of first degree premeditated murder.  They were each sentenced to life in prison. *State v. George Arthur Lee Smith, et. al.*, No. E2009-00984-CCA-R3-CD, 2007 WL 4117603, at *1 (Tenn. Crim. App., at Knoxville, Nov. 19, 2007), *perm. app. denied*, (Tenn. Feb. 25, 2008).  Petitioner was unsuccessful on direct appeal to this Court.  *Id.*  Petitioner subsequently filed a petition for post-conviction relief alleging that she was afforded the ineffective assistance of counsel and her constitutional rights were violated by various means.  The post-conviction court denied the petition.  Petitioner appeals this decision.  After a thorough review of the record, we conclude that Petitioner has not proven her allegations.  Therefore, we affirm the denial of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Crimianl Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and J.C. MCLIN, JJ., joined.

Troy L. Bowlin, II, Morristown, Tennessee, for the appellant, Shannon Lee Jarnigan.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; C. Berkeley Bell, District Attorney General, and Victor Vaughn, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

Petitioner and her co-defendants were convicted of one count each of first degree premeditated murder and sentenced to life to prison. *George Arthur Lee Smith*, 2007 WL 4117603, at *1. This Court summarized the underlying facts in the following manner:

> This case arises from the murder of Donald Wilder, Jr., which occurred in June of 2003. The State alleged that Defendant Smith shot and killed Wilder with the assistance of his girlfriend, [Petitioner]. The State further alleged that Defendant Allen requested that the murder be committed, provided drugs to assist in the killing, and provided money and drugs in exchange for the killing. The Defendants were all charged with first degree premeditated murder, with [Petitioner] and [Defendant] Allen being charged under the theory of criminal responsibility.

*Id.* Petitioner was unsuccessful on direct appeal to this Court. *Id.* at *33.

Petitioner filed a petition for post-conviction relief on December 5, 2008. Petitioner alleges, among other things, that she was afforded ineffective assistance of counsel, her constitutional rights were violated by the recording of her conversation with her co-defendant while in the backseat of a police cruiser, and her constitutional rights were violated by prosecutorial misconduct based upon her allegations that the District Attorney instructed the State's witnesses not to talk to the defense. The post-conviction court held a hearing on March 12, 2010.

## Post-conviction Hearing

Petitioner was the first witness at the hearing. She testified that trial counsel was her counsel throughout her criminal prosecution. She stated that he met with her seven to ten times during the two years between her arrest until her conviction. Throughout the two years, she was at the Hamblen County Jail, and the jail was the location of her meetings with trial counsel. According to Petitioner, the meetings lasted approximately twenty to thirty minutes. She also testified that she met with trial counsel's private investigator twice.

Petitioner testified that prior to her arrest, the police searched the residence she shared with Co-defendant Smith. She testified that she was never shown a search warrant prior to

the search and she did not give them consent to search. The police recovered various drug paraphernalia during the search. Petitioner stated that they did not find anything that would connect her or Co-defendant Smith to the murder. She stated that she knew of no motion to suppress that evidence filed by trial counsel. Petitioner stated that the drug paraphernalia evidence was not used at trial.

Petitioner testified that during the search, she and Co-defendant Smith were placed in the back of a police cruiser. In that cruiser was a hidden audio tape recorder. For the hour that the co-defendants were in the back of the police cruiser, everything they said was recorded. Petitioner stated that she had not been read her rights before being placed in the cruiser. According to her, Co-defendant Smith repeatedly asked for a lawyer, but she did not. She maintained that she did not make any incriminating statements while they were in the police cruiser. Trial counsel did not file a motion to suppress of his own but instead adopted the motion filed by co-defendant's counsel. This motion was denied.

Petitioner stated at the hearing that witnesses Connie Lawson and Kristopher Jarnigan, Petitioner's brother, were both told by the District Attorney's Office to not speak to defense counsel. She stated that they were coerced and that such an action constituted prosecutorial misconduct. However, Petitioner was not a direct witness to the alleged coercion.

Petitioner also testified to several instances of ineffective assistance of counsel. She stated that trial counsel did not investigate Juror William Stokes, who was a prior informant for the Hamblen County Sheriff's Department. She admitted that he had not been an informant in the case at hand. Petitioner also stated that one of the jurors was the father-in-law of one of the State's witnesses. Trial counsel did not challenge the first juror but did challenge the second juror. The second juror was not excused. Trial counsel unsuccessfully raised the issue on appeal.

Petitioner stated that trial counsel told her it was in her best interest not to testify at trial. She stated that she agreed with his advice at the time of trial. Petitioner stated that she told trial counsel a few times that she wanted to testify and his response was that they should "see how it goes." She later testified at the hearing that trial counsel never told her not to testify.

Petitioner also argued that she had provided trial counsel with the names of several potential witnesses to testify on her behalf. She stated that they would have testified to the abuse Petitioner had suffered at the hands of Co-defendant Smith, but the potential witnesses were never subpoened. She also stated that she told trial counsel that she was shopping for food at the time of the murder with her friend, Renee Banks. Trial counsel did not follow up on this alibi. The State did check to see if she had used her food stamps that day.

Petitioner also stated that she was not provided with statements obtained during interviews with the State's witnesses. In particular, Michael Brassfield, Kristopher Jarnigan, Cynthia Forrester, Danielle Epps, Phyllis West, and Connie Lawson. She asked if these witnesses had been interviewed, and trial counsel responded that the private investigator would follow up. Mr. Brassfield was the only witness with whom the private investigator spoke.

Petitioner stated that the State did offer a plea deal of life without parole. She asked trial counsel to get a better deal. According to Petitioner, she told trial counsel that she would not accept anything more than a six- to ten-year sentence. Trial counsel attempted to get a better deal, but the State was not receptive. Petitioner also stated that trial counsel never spoke with her about her mental state or mental capacity throughout his representation of her. She testified that she had mental stability problems because she had had nervous breakdowns in the past. She stated that she told trial counsel that she had had nervous problems, post-partum depression and abuse, but trial counsel did not ask for a psychological evaluation. She testified that she believed that such an evaluation would have helped her case.

Petitioner also argued that there was newly-discovered evidence in that her friends Charlene Wilheight and Renee Banks knew about the abuse perpetrated by Co-defendant Smith. She also stated that Dennis Bowan saw her bruises. Trial counsel did get evidence regarding the alleged abuse in the form of police photographs and hospital records.

Petitioner testified that trial counsel did not discuss trial strategy with her. He told her that "it didn't look good." Trial counsel provided Petitioner with discovery, and he discussed some of the discovery with her. However, she did not see any interview notes regarding interviews with the State's witnesses. Petitioner stated that she was not aware of any interviews with any of the State's witnesses.

On cross-examination, Petitioner maintained that she did not learn of a search warrant for her residence at any time throughout trial preparation. She agreed that no one was asking her questions when she was in the police cruiser with Co-defendant Smith. She also admitted that Ms. Lawson and Mr. Jarnigan testified at trial and were cross-examined by trial counsel. Petitioner agreed that trial counsel did not tell her not to testify at trial. He did advise her that it was in her best interest not to testify, and she agreed with him at that time. Petitioner maintained that trial counsel did not interview any State's witnesses except for Mr. Brassfield.

Trial counsel also testified at the hearing. He stated that he had sixteen years of legal experience and that two-thirds of his practice is criminal. He has been qualified for nine or

ten years by the State to represent defendants who are facing the death penalty. Trial counsel stated that he met with Petitioner eleven times. The shortest meeting was thirty minutes and the longest was an hour and a half. He calculated that he completed 220 hours of out of court work and thirty-one hours of in court work. He also employed an investigator who put in about 100 hours of work on Petitioner's case. The investigator met with Petitioner on at least two occasions for extended interviews. Trial counsel also had a second chair attorney who put in a great deal of work on the case.

Trial counsel and the investigator both tried to interview the State's witnesses. Many of the witnesses refused to be interviewed by the investigator. Ms. Lawson herself refused, and her mother also refused to let the defense team speak with Ms. Lawson. The defense team did not know the location of some of the State's witnesses and could not find them. They did have the written statements of the witnesses and all discovery from the State. Trial counsel stated that it is his policy for the investigator to keep his notes from any interviews and not give them to trial counsel. Trial counsel does this so he does not have to turn over the results of the interviews to the State in discovery. This is a tactical decision on trial counsel's part.

The defense team located some mitigation witnesses to testify that Petitioner should not get life without parole, but it was hard to find them. They were prepared to put these witnesses on the stand during the penalty phase. However, it was not necessary because the State withdrew the life without parole notice and Petitioner got automatic life with parole when the jury came back with a guilty verdict.

Petitioner provided trial counsel with the names of potential witnesses. The defense team could not locate some of the witnesses. Other witnesses were interviewed, but trial counsel determined that the witnesses could not be truthful. Therefore, he did not have a truthful alibi witness to put on the stand.

With regard to defenses, trial counsel stated the following:

> Sure, we discussed defenses. We discussed lots of defenses, whatever come [sic] to mind. But it was a difficult defense because of the statement that the co-defendant, her boyfriend, the father of one or two of her children, had made to the state. And she had made some statements, and I believe she had showed the officers where the gun was dumped, and they actually found the gun in the creek down here. And so the defense, you know, accessory after the fact, would have been potential, and that's what we sort of tried at court was that she wasn't aware of it. The state brought in Kris Jarnigan to say that prior to the killing that [Co-defendant Smith ] and [Petitioner] were trying to locate

-5-

a gun. That was devastating because that was her brother testifying about them trying to locate a gun before Wilder got killed. And a devastating witness was Connie Lawson; when she said in her testimony, we killed him execution style, on the stand that was a – because that was [Co-defendant Smith's] sister that [Petitioner] lived with part – was devastating to our defense of ["]I didn't know anything about it.["]

Trial counsel stated that he thoroughly cross-examined Ms. Lawson.

Trial counsel stated that he did look into Petitioner's mental health. He purchased her medical records. However, he did not perceive any mental issues with regard to Petitioner. It is his practice that if he believes his client might have a mental issue, he gets a mental evaluation completed for that individual.

Trial counsel's theory of the case was that Co-defendant Smith committed the murder by himself and that Petitioner did not know about it beforehand and did not know much afterwards. His hope was that she would be found guilty of accessory after the fact. Trial counsel testified that he spoke with her about pleading guilty. He told her that he thought the State would accept something between fifteen and twenty-five years for facilitation or conspiracy. Petitioner told trial counsel that she would accept six years as an accessory after the fact. The District Attorney refused to consider the offer.

Trial counsel testified that many of the issues raised in the petition were raised in Petitioner's direct appeal. These issues include jurisdiction, cause of death, juror issues, and sufficiency of the evidence. Trial counsel also adopted the issues presented on direct appeal by her co-defendants. With regard to trial preparation, trial counsel stated that he filed the basic defense motions and adopted several of the co-defendants' motions as well. He also objected to several items on the exhibit list in order to minimize the evidence that the State could present at trial. As a result, several exhibits were excluded, and several statements were redacted.

Trial counsel stated that he copied a motion to exclude the recorded conversation in the police cruiser. The motion was unsuccessful. The trial court denied the motion citing no reasonable expectation of privacy in the back of a police cruiser. Trial counsel also attempted to get the search thrown out, but there had been a valid search warrant to support the search of the house.

On May 6, 2010, the post-conviction court filed a written order denying the petition. Petitioner filed a timely notice of appeal.

## ANALYSIS

On appeal, Petitioner raises several arguments. She argues that the post-conviction court erred in dismissing her petition because trial counsel was ineffective for failing to move to suppress the recording of her conversation with Co-defendant Smith held in the back of the police cruiser; trial counsel and his investigator met with her an insufficient number of times and for an insufficient length of time; trial counsel did not call any witnesses in her defense; trial counsel advised her that it was not in her best interest to testify on her own behalf; trial counsel did not secure a psychological examination of Petitioner; and trial counsel did not adequately interview witnesses and thoroughly investigate her case. In addition, she argues that there was prosecutorial misconduct because the District Attorney General allegedly instructed the State's witnesses to not talk to the defense team and that the jury should have been instructed on lesser included offenses.

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim .App.1997). This Court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins*, 911 S.W.2d at 347. This Court may not second-guess a reasonably based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

## Ineffective Assistance of Counsel

As stated above, Petitioner asserts several occurrences of ineffective assistance of counsel. We first address Petitioner's argument that trial counsel failed to file a motion to suppress the tape of the conversation held in the back of the police cruiser. With regard to the suppression of the audiotape recording, the post-conviction court stated that Petitioner had no expectation of privacy in the back of the police cruiser and was not being interrogated. Rather, petitioner and co-defendant had a voluntary conversation and the tape should not have been suppressed. The post-conviction court also stated that this issue was without merit because this Court addressed the admissibility of the audiotape recording in the direct appeal. *George Arthur Lee Smith*, 2007 WL 4117603, at *29-32.

This Court's opinion in the direct appeal does not directly address whether the audiotape recording should have been suppressed. Instead, the direct appeal addresses whether the recording should have come into evidence under Rule 404(b) of the Tennessee Rules of Evidence. So, we conclude that this issue is not previously determined.

The question becomes whether trial counsel was ineffective for failing to file a motion to suppress and, if so, whether Petitioner was prejudiced by his failure to do so. Prior to trial, trial counsel adopted a motion filed by Co-defendant Smith to exclude the audiotape recording from evidence. The trial court denied the motion based upon the conclusion that Petitioner and Co-defendant Smith did not have a reasonable expectation of privacy.

Although trial counsel did not file a motion to suppress, he did file a motion prior to trial to exclude the audiotape recording from evidence. This is tantamount to a motion to

suppress. The trial court ruled against Petitioner. This Court has previously determined that two individuals who are not under arrest, but are in the backseat of a police cruiser, and have a voluntary conversation that is recorded do not have an expectation of privacy. *See State v. Morgan*, 929 S.W.2d 380, 384 (Tenn. Crim. App. 1996); *see also State v. Gosnell*, 62 S.W.3d 740, 747 (Tenn. Crim. App. 2001). The recording of a conversation in this factual scenario, as is the case at hand, does not violate an individual's constitutional rights. *Morgan*, 929 S.W.2d at5 384; *see also Gosnell*, 62 S.W.3d at 747. Petitioner is unable to show that she has been prejudiced.

Petitioner also argues that trial counsel did not call any witnesses in her defense. At the hearing, trial counsel testified that he and the investigator were unable to locate several of the witnesses she suggested. He also stated that the witnesses he could locate were not truthful and that he refused to put on an alibi witness who was not truthful. Despite the fact that trial counsel had an ethical obligation to refrain from calling a witness who he knew was untruthful, the post-conviction court concluded that trial counsel "made a tactical decision as to the calling of witnesses in petitioner's defense." This is a reasonable trial strategy and, as stated above, we are not to second guess trial counsel's tactical decision not to call the witnesses.

Furthermore, a petitioner must present witnesses at the post-conviction hearing to prevail on a claim of deficient representation for failing to call a witness at trial. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). A post-conviction court may not speculate, "on the question of . . . what a witness's testimony might have been if introduced at trial." *Id.* In the case at hand, Petitioner did not present the witnesses she claims that trial counsel should have presented. We conclude that the evidence presented at the hearing does not preponderate against the findings of the trial court. Petitioner is unable to demonstrate both that her representation was deficient and that she was prejudiced by her representation.

We now address Petitioner's argument that trial counsel met with her an insufficient number of times and length of time. Trial counsel testified that he met with Petitioner eleven times and the shortest of those meetings lasted thirty minutes. He stated that the investigator met with Petitioner at least two times for extended interviews. The trial court found that trial counsel was more credible than Petitioner at the hearing. We conclude that Petitioner has failed to prove that trial counsel's representation was deficient with regard to the number and length of meetings.

Petitioner also argues that trial counsel was ineffective for advising her that it was not in her best interest to testify on her own behalf. The trial court made the following findings, "At the post-conviction hearing, petitioner testified that '[trial counsel] told me it was in my best interest not to testify.' The Court finds that petitioner has made conflicting sworn

statements, and therefore is not credible as compared to her attorney, [trial counsel] whose credibility is impeccable." After a review of the record, we find no evidence in the record to preponderate against the trial court's factual finding that Petitioner has made conflicting statements and that trial counsel is more credible. Trial counsel testified that he told Petitioner it was not in her best interest to testify, and she agreed with him. Therefore, Petitioner has not shown that she received ineffective assistance of counsel with regard to this issue.

Petitioner's next allegation is that she was afforded ineffective assistance of counsel because trial counsel did not secure a psychological examination of her. The post-conviction court found trial counsel's testimony credible once again. Trial counsel testified that he considered Petitioner competent and did not see any "red flags" to indicate otherwise. We find no evidence to preponderate against this finding. In addition, we note that Petitioner testified that she had had nervous breakdowns in the past and that she suffered from post-partum depression. At the post-conviction hearing Petitioner did not present any expert testimony as to her psychological condition. Therefore, even if she had proven that trial counsel's representation was deficient, she cannot prove that she was prejudiced by the failure to secure a psychological evaluation because she has not presented the Court with any evidence as to what a psychological evaluation would have shown.

Finally, Petitioner states, "[Petitioner] believes that [trial counsel] did not interview and thoroughly investigate her case as prescribed in *Baxter v. Rose*, 523 S.W.2d at 932-33 (quoting *United State v. DeCoster*, 487 F.2d 119 D.C. Cir. 1973)." Petitioner does not elaborate in what ways trial counsel failed to interview and investigate her case, or in what ways his representation was deficient in this regard. The post-conviction court found trial counsel's testimony to be credible as compared to Petitioner's. The post-conviction court also concluded in its factual findings that trial counsel had sufficiently interviewed witnesses and investigated the case. We find nothing in the record to preponderate against these factual findings. We conclude that Petitioner has not shown that trial counsel's representation was deficient in regard to these allegations.

As stated above, Petitioner has been unable to prove that she received ineffective assistance of counsel with regard to these issues. Therefore, these issues are without merit.

### Prosecutorial Misconduct and Jury Instruction

With regard to Petitioner's allegations of prosecutorial misconduct and the failure of the trial court to instruct the jury on lesser included offenses, these issues have been waived. Petitioner could have raised these issues on her direct appeal. There is nothing to show that either was raised. A ground for post-conviction relief is waived "if the petitioner personally

or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." T.C.A. § 40–30–106(g).

## CONCLUSION

For the foregoing reasons, we affirm the post-conviction court's denial of the petition for post-conviction relief.

_____

JERRY L. SMITH, JUDGE