UNITED STATES of America,
Plaintiff-Appellee,

v.

Roe Harold LANCE, Defendant-Appellant.

No. 75–3718

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 9, 1976.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Roland E. Dahlin, Federal Public Defender, William W. Burge, Asst. Federal Public Defender, William Burge, Houston, Tex., for defendant-appellant.

Edward B. McDonough, Jr., U.S. Atty., Mary L. Sinderson, George A. Kelt, Jr., James R. Gough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before AINSWORTH, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Appellant Roe Harold Lance, along with Randall Todd Regelin, was charged with conspiracy to commit extortion through the mail and with four substantive counts of extortion through the mail. 18 U.S.C.A. § 876. Following a jury trial, Lance was found guilty and Regelin was acquitted on all five counts of the indictment. Lance was sentenced to two and five-year sentences, all to run concurrently. Lance appeals asserting insufficiency of the evidence and improper jury instructions. We affirm.

■ Robert (Junior) Stoner testified that he lived in Dexter, Missouri, and had a son named Timothy. He said the defendant Lance was his cousin. On May 12, 1975, he received two letters and two cassette tapes written and recorded by Lance. Approximately a week later he received another letter from Lance and one from his son in the same envelope. One more letter from defendant Lance was received within a week.

Except for the one from his son, the letters received were signed by Lance. The tapes contained the voices of, among others, son Timothy and the defendant.

After receiving the first letters and tapes, Stoner contacted an FBI agent and listened to the tapes with the agent. He had not known where his son was until he received the initial letters and tapes which indicated that Timothy was in Mexico with Lance.

The first letter stated in part that the defendant and Timothy Stoner were in Mexico, they were in a jam, "have got to have some money to start us a business or we are both going to end up in jail." Lance then wrote that they needed a truck and motorcycle for a proposed business and one thousand dollars, which he could pay back to Stoner in a few months. The defendant then stated that "we have to have money or else." He further stated:

Like I said, I can make it on my own somehow but not with the responsibility of taking care of Tim. You send us the

money and we can make it easy and stay out of jail, but if you don't send the money, I'm going to call the Mexican F.B.I. and tell them where Tim is and when they find him with all of those guns, well, he will be in prison for the rest of his life.

Junior, Tim is your son. Send us the money and help him. Don't think I'm bluffing about calling the Mexican F.B.I. if you don't send the money, because I don't have anything to lose.

The communication then gave Stoner directions to send the money by addressing mail to co-defendant Randall T. Regelin, General Delivery, Laredo, Texas.

In another letter the defendant wrote to Stoner that if he refused to loan him money or property to "remember what these guys are talking about. About kidnapping Tim and asking $75,000.00 or cutting off his fingers if you don't pay."

In one of the tapes, Lance said to Stoner: "You see, Junior, I am boss of a gang and some of them think that after we take this town, that we should hold Tim prisoner and ask for $75,000 or cut his fingers off and send them to you along with pictures to prove they are his fingers." Another letter carried the same information.

Defendant Lance and Timothy Stoner were arrested at Eagle Pass, Texas, on July 17, 1975. After his arrest, the defendant told an agent that he put co-defendant Regelin's return address on the letters to the Stoners instead of his own because he did not want his own family to know where he was.

Timothy Stoner testified that he lived in Monterrey, Mexico, in 1975 with the defendant, the defendant's wife, and the defendant's wife's parents. He said the defendant talked him into coming to Texas and Mexico where they spent all of their money and then returned to Missouri and committed armed robbery. They brought guns, gained in the robbery, to Mexico and left them at a hotel and then went to Monterrey for a month. The letters and tapes were composed in Monterrey by Lance. Timothy Stoner wrote letters to his parents but he lost them before mailing them. He identified one letter sent by Lance to Stoner as one of the letters that had been written and lost.

Lance testified that he was in Dexter, Missouri, in 1974 and 1975 when he was working as an informer with the United States Drug Enforcement Administration. He recorded the tapes and wrote the letters, and had them mailed. Lance testified that it was never his intent to extort money from Robert Junior Stoner by threatening the life of Timothy and that his only purpose was to borrow money from Stoner. Defendant said he was merely relating a threat made by someone else concerning Timothy Stoner when he spoke of Timothy's fingers being cut off.

A review of the evidence reveals ample support for the jury verdict, especially in view of the rule that on appeal evidence must be reviewed most favorably to the Government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ It would seem to make little difference under 18 U.S.C.A. § 876 that the person seeking money intended to receive it as a loan even if the defendant's testimony could be considered to have established that fact. Section 876 provides:

Whoever, with intent to extort from any person any money or other thing of value, so deposits [in any post office or authorized depository for mail matter, to be sent or delivered by the Post Office Department], or causes to be delivered, as aforesaid [by the Post Office Department according to the direction thereon], any communication containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

 * * * * * *

Whoever, with intent to extort from any person any money or other thing of value, knowingly so deposits or causes to be delivered, as aforesaid, any communication, with or without a name or desig-

nating mark subscribed thereto, addressed to any other person and containing any threat to injure the property or reputation of the addressee or of another, or the reputation of a deceased person, or any threat to accuse the addressee or any other person of a crime, shall be fined not more than $500 or imprisoned not more than two years, or both.

In a similar statute making a broad range of extortion illegal, the Hobbs Act defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear . . . ." 18 U.S.C.A. § 1951(b)(2). The only difference between the Hobbs Act and § 876 is that § 876 concerns the use of mails, while the Hobbs Act is written in terms of commerce. The other elements of the offenses proscribed by the two statutes are the same. The Supreme Court has interpreted the Hobbs Act as covering "those instances where the obtaining of the property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property." *United States v. Enmons,* 410 U.S. 396, 400, 93 S.Ct. 1007, 1009, 35 L.Ed.2d 379 (1973). In a case involving this same provision Judge Wisdom recently wrote, "One need receive no personal benefit to be guilty of extortion; the gravamen of the offense is loss to the victim." *United States v. Hyde,* 448 F.2d 815, 843 (5th Cir.), *cert. denied,* 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745 (1971). *See United States v. Provenzano,* 334 F.2d 678, 686 (3d Cir.), *cert. denied,* 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964). The loss of the use of money, even temporarily, must be considered a deprivation of property. Conversely, the benefit of obtaining the use of money, even temporarily, must be considered as obtaining "property from another." In any event, the tapes and letters were sufficient to discredit the defendant's testimony in regard to whether the demand for money was for a loan only.

 The argument that Lance should have been acquitted of conspiracy because the named co-conspirator, Regelin, was acquitted must fail. The indictment alleged that the two conspired with each other and other unknown persons. The evidence, including defendant's own testimony, supported the conclusion that other persons were involved. We have held that a person can be convicted of conspiring with persons whose names are unknown so long as the indictment asserts that such other persons exist and the evidence supports their existence. *United States v. Goodwin,* 492 F.2d 1141, 1144 (5th Cir. 1974); *Jenkins v. United States,* 253 F.2d 710 (5th Cir. 1958). This is true even when co-defendants are known and not prosecuted. *United States v. Cabrera,* 447 F.2d 956 (5th Cir. 1971); *Rosecrans v. United States,* 378 F.2d 561 (5th Cir. 1967). This case is unlike *United States v. Peterson,* 488 F.2d 645 (5th Cir. 1974), where the only two alleged conspirators were named defendants. No instruction was requested that if one defendant were found not guilty, a guilty verdict could be returned against the other defendant only if the jury found that he conspired with someone other than the exonerated defendant. We perceive no plain error.

 Contrary to appellant's argument, the instructions read as a whole do not lead to reversible error in the jury instruction concerning the extent to which the credibility of the accused as a witness might be affected by his interest in the outcome of the trial. *United States v. Pittman,* 439 F.2d 906, 909 (5th Cir. 1971); *United States v. Haney,* 429 F.2d 1282 (5th Cir. 1970); *Nelson v. United States,* 415 F.2d 483 (5th Cir.), *cert. denied,* 396 U.S. 1060, 90 S.Ct. 751, 24 L.Ed.2d 754 (1970); *cf. Taylor v. United States,* 390 F.2d 278 (8th Cir. 1968).

AFFIRMED.