**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jerald Lee EVERS and Adelle Raye
White, Defendants-Appellants.**

**No. 76–1755.**

United States Court of Appeals,
Fifth Circuit.

May 26, 1977.

Rehearing and Rehearing En Banc
Denied July 15, 1977.

Harry Lee Hudspeth, El Paso, Tex., for Evers.

Keith C. Monroe, Santa Ana, Cal., for White.

John E. Clark, U. S. Atty., John M. Pinckney, III, Le Roy Morgan Jahn, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before TUTTLE, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Evers and White appeal their two count convictions under the federal drug laws, arguing: (1) the evidence was insufficient to convict Evers, (2) a search warrant was obtained without probable cause, and (3) the Government engaged in misconduct in opposing an asserted entrapment defense. Finding no error, we affirm.

■ *The Government introduced sufficient evidence to convict Evers.* Defendant Adelle White admitted guilt and asserted entrapment as her only defense. Jerald Evers argues the Government failed to show he was anything more than an innocent bystander to White's activities. White's statements which incriminate Evers were not part of the Government's case in chief and should not be weighed in assessing the sufficiency of the evidence against him. *See United States v. Arias-Diaz,* 497 F.2d 165, 168–169 (5th Cir. 1974), *cert. denied,* 420 U.S. 1003, 95 S.Ct. 1445, 43 L.Ed.2d 761 (1975).

■ Viewing the evidence in the light most favorable to the jury verdict, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct.

457, 86 L.Ed. 680 (1942), the jury could conclude beyond a reasonable doubt that Evers was guilty of both conspiracy to possess and possession of a controlled substance with intent to distribute. 21 U.S. C.A. §§ 841(a)(1), 846. When the Government rested its case, the jury knew the essential details of the charges against both defendants. They knew White flew to El Paso, Texas, rented a car at the airport, was registered at a motel under a false name, and the next day purchased 105 pounds of marijuana. At 11:00 that evening, a Government informer told a federal officer about the sale, and said the marijuana was stored in the car trunk. The agents began surveillance of the car, which was parked outside the motel room. With the exception of a four hour gap between 3:00 and 7:00 the next morning, surveillance continued until the defendants were arrested. At 11:45 a. m. the next day, the officers obtained a warrant to search the car. The officers stopped the vehicle at the El Paso International Airport, searched it, found the marijuana and arrested both White and Evers, who was riding with her.

■ At the close of the Government's case, the jury had before it enough facts to convict Evers. The jury knew Evers had registered them both at the motel, giving a false name, and false address, and using a bogus driver's license with his picture on it. The jury knew that shortly after they registered at the motel, the illegal marijuana sale was made. The jury knew Evers was seen continuously in White's company during her stay in El Paso. Finally, the jury knew he and White checked out of the motel, shortly after the transaction, and were arrested in a car carrying 105 pounds of marijuana in its trunk. Proof of constructive possession by circumstantial evidence is sufficient under the statute. *United States v. Mendoza*, 433 F.2d 891 (5th Cir. 1970), *cert. denied*, 401 U.S. 943, 91 S.Ct. 953, 28 L.Ed.2d 225 (1971).

*Probable cause supported the search warrant.* The affidavit presented to the magistrate asserted the informant was reliable and recited the receipt of reliable informa-

tion from the informant on previous occasions within the past six months. On one such occasion the information had resulted in the arrest of several marijuana violators.

The affidavit then recited that the informant knew through "personal knowledge and observation" that a large quantity of marijuana was in the trunk of an automobile, identifying the car by description and license plate number. The informant "believed" Adelle White rented the car, that she had flown to and from El Paso by commercial aircraft on previous occasions to "buy and transport" marijuana, and had rented vehicles to facilitate her marijuana transactions. The informant further revealed the motel room where White was staying, accompanied by the white male named Jerald or Gerald.

■ The officers communicated to the magistrate their confirmation by independent investigation that White had rented a car which met the informer's description. They found the car in front of the motel room in which the informer said the defendants were staying. They discovered the room had been rented to persons under an assumed name using a falsified driver's license, a fact which suggested criminal activity. They corroborated White's use of airport rental vehicles during prior short trips to El Paso. The previously reliable informer's statements, together with the corroboration by the agents furnished sufficient probable cause for the issuance of a search warrant. *United States v. Anderson*, 500 F.2d 1311, 1315–1317 & n. 9 (5th Cir. 1974); *United States v. Acosta*, 411 F.2d 627, 629 (5th Cir. 1969).

Defendants allege the informant's information was too stale to support probable cause. The affidavit does not say when the informant saw the marijuana in the car trunk, and it could have been as much as two days before the warrant was issued. They point out the disposable quality of marijuana and the improbability that a car trunk would be used for storage. In *Sgro v. United States*, 287 U.S. 206, 210–211, 53 S.Ct. 138, 77 L.Ed. 260 (1932), the Supreme Court provided this standard for evaluating

the staleness of information supporting a warrant:

> [T]he proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case.

287 U.S. at 210–211, 53 S.Ct. at 140. While the mobile nature of automobiles and transient quality of marijuana might tend to rebut the inference of probable cause, *cf. United States v. Prout,* 526 F.2d 380, 386 n. 5 (5th Cir.), *cert. denied,* 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109 (1976) (dictum), the affidavit discloses· a course of conduct by defendant White which adequately justified the warrant. *United States v. Harris,* 403 U.S. 573, 579 n. *, 91 S.Ct. 2075, 129 L.Ed.2d 723 (1971); *United States v. Guinn,* 454 F.2d 29, 36 (5th Cir.), *cert. denied,* 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1972). It revealed that on previous trips to El Paso to "buy and transport" marijuana, White had used rental vehicles and left town by airplane. The prior visits were short, lasting two or three days. Because the informant told the officers that on this trip White had acquired a large quantity of highly valuable marijuana, it was logical to conclude that at least some of it was to be stored in the car trunk until she returned the rented auto at the airport. Relying on this interpretation of her behavior, the possible two day delay is insignificant. The expectation was that she would possess the drugs until after she left town.

Defendants accuse the officers of making material misrepresentations to the magistrate by neglecting to include in the affidavit information concerning the removal of certain suitcases from the car trunk prior to the issuance of the warrant. Assuming such an omission could be considered a misrepresentation, the misrepresentation was not material. If the information had been included, the affidavit would still have supported a finding of probable cause. *See United States v. Thomas,* 489 F.2d 664, 668, 671 (5th Cir. 1973), *cert. denied,* 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975). When the suitcases were removed, the agents believed the marijuana was in the trunk, but they did not know whether it was being kept in suitcases or in some other form of container. In any event, the suitcases were taken into the motel room, and both the room and the car remained under surveillance. Given the agents' knowledge of defendant White's method of operation, they had every reason to expect the suitcases would be returned to the trunk before she left for the airport.

*The prosecution was not guilty of misconduct.* A grand jury indicted the defendants in January 1975, but in July the Government had the indictment dismissed. In October 1975 a new indictment was brought. That indictment resulted in convictions of both defendants for conspiracy to possess and possession of a controlled substance with intent to distribute. 21 U.S.C.A. §§ 841(a)(1), 846. The trial judge refused to grant a jury instruction on entrapment "as a matter of law" requested by defendants.

Defendants assert that, under *United States v. Bueno,* 447 F.2d 903 (5th Cir. 1971), *cert. denied,* 411 U.S. 949, 93 S.Ct. 1931, 36 L.Ed.2d 411 (1973), the Government entrapped them, because the informer employed by the Government also supplied them with the marijuana they were convicted of possessing. They allege the Government denied them due process by wrongfully dismissing the first indictment hoping the Supreme Court would change the *Bueno* entrapment law in its favor by acting on the petition for certiorari that had been granted in *Hampton v. United States,* 420 U.S. 1003, 95 S.Ct. 1445, 43 L.Ed.2d 761 (1975).

The Court's decision in *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), handed down after the trial of this case, may well have eliminated the *Bueno* defense. In *Bueno* the Court found entrapment as a matter of law when unrebutted testimony showed that a Government informer had supplied illegal drugs to a defendant who then sold them to a Government agent. In that "full circle" transaction, the evil was

the government buying heroin from itself, through an intermediary, the defendant, and then charging him with the crime.

447 F.2d at 905. *Bueno* was questioned after the Supreme Court's decision approving something akin to full circle conduct in *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). This Circuit, however, distinguished *Russell* on the ground that the substance supplied in *Russell* was legal, and was only one ingredient of the drugs the Government agent purchased. *United States v. Oquendo,* 490 F.2d 161, 163 (5th Cir. 1974). *Hampton,* however, rejected that distinction and found no entrapment "per se" even though a full circle transfer of illegal drugs had taken place.

■ Defendants' attempt to show misconduct by the Government fails for two reasons. First, the facts here do not square with the *Bueno* precedent on which defendants attempt to rely. Defendants were not victims of a "full circle" Government scheme. They bought from a Government informer but did not allege that they sold, or even planned to sell, their marijuana to a Government agent. The cases in this Circuit following *Bueno* and finding entrapment as a matter of law have been "full circle" cases. *United States v. Gomez-Rojas,* 507 F.2d 1213 (5th Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975); *United States v. Mosley,* 496 F.2d 1012 (5th Cir. 1974); *United States v. Oquendo,* 490 F.2d 161 (5th Cir. 1974). While at least one federal district court had held a "half circle" to constitute entrapment, *United States v. Chisum,* 312 F.Supp. 1307 (C.D.Cal.1970), and another Circuit has suggested *Bueno* would apply to "half circle" cases, *United States v. Jett,* 491 F.2d 1078, 1081 (1st Cir. 1974), there is considerable doubt that defendants ever had a *Bueno* defense, especially after the decision in *Russell.*

Second, there is no bad faith in the Government's gearing its prosecution to current applicable litigation. If uncertain law is to be made certain within the time frame of permissible prosecution, the Government may, within its discretion, await clarification. Although in this case the law developed favorably to the Government's contention, in the next case it may develop unfavorably. Although it turned out to advantage the Government here, a different result in the Supreme Court might have advantaged the defendant. The delay does not constitute bad faith.

■ Under Fed.R.Crim.P. 48(a), a prosecutor is normally free to dismiss one indictment and bring another based on further development of his case. *United States v. Davis,* 487 F.2d 112 (5th Cir. 1973), *cert. denied,* 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974). As we noted in *Davis:*

> Absent a showing of extreme prejudice amounting to a Fifth Amendment denial of due process, the commencement of prosecution is controlled exclusively by the applicable statute of limitations.

487 F.2d at 116. The statute of limitations embodies a legislative declaration of the time during which a prosecutor may seek an indictment without unfairly burdening the citizen's right to defend himself. *United States v. Marion,* 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

■ Defendants have not shown improper prejudice from the dismissal of the first indictment. The ability of courts to limit holdings to prospective application, if retroactivity would be unfair, mitigates any prejudice an individual might otherwise suffer from a law-changing decision. *Cf. Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

■ Prosecutorial delay, not barred by the statute of limitations, solely for the purpose of ensuring the most fully developed view of the law, at the time of trial, cannot be said to be a denial of due process.

AFFIRMED.