**UNITED STATES of America,**
**Plaintiff-Appellant,**

**v.**

**Glen D. GRAVES, Lewis Weinstein, and Graves Construction Company, Inc., a/k/a Graves Construction, Inc., Defendants-Appellees.**

**No. 76–3526.**

United States Court of Appeals, Fifth Circuit.

Aug. 5, 1977.

Rehearing and Rehearing En Banc Denied Oct. 12, 1977.

Thomas W. Turner, Sp. Atty., Mervyn Hamburg, U. S. Dept. of Just., Crim. Div., Fraud Section, Washington, D. C., James E. Wilson, D. H. Perkins, Jr., Asst. U. S. Attys., Shreveport, La., for plaintiff-appellant.

C. William Gerhardt, Shreveport, La. (Court-appointed), for Glen D. Graves and Graves Construction Co.

John R. Martzell, New Orleans, La., for Lewis Weinstein.

Before TUTTLE, TJOFLAT and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

The United States brings this appeal from the pretrial dismissal of an indictment charging appellees with conspiracy to submit false statements to the Federal Housing Administration ("FHA") and the completed substantive offenses.[1] The Government alleged that appellees had (a) fraudulently attempted to secure mortgage insurance under section 235 of the National Housing Act of 1968 for buyers whom they knew were not qualified; (b) falsified documents submitted to FHA concerning the income, assets, liabilities, credit, employment and other information pertaining to prospective mortgages; and (c) failed to comply with the statutory requirement of obtaining a $200 down payment from each prospective mortgagor and falsified documents pertaining thereto.

Prior to trial, the appellees filed motions to dismiss the indictment on the ground that FHA knew of, acquiesced in, approved, and encouraged the submission of false statements such as those alleged in the indictment. Characterizing the alleged actions of FHA officials as "outrageous governmental misconduct," the appellees sought dismissal of the indictment on the ground of entrapment as a matter of law. At a hearing on the motion, the Government objected to pretrial consideration of the entrapment issue and contended that entrapment could not be proven by showing misconduct by FHA officials who were not connected with the enforcement of criminal laws. Even after the district court permitted extensive testimony by defense witnesses, the Government declined to call rebuttal witnesses and continued to assert that consideration of the entrapment defense was premature. Citing *United States v. Bueno*, 447 F.2d 903 (5th Cir. 1971), *cert. denied*, 411 U.S. 949, 93 S.Ct. 1931, 36 L.Ed.2d 411 (1973), the district court then dismissed the indictment. We reverse.

### I. *The Pretrial Hearing.*

Testimony adduced at the hearing showed that appellee Graves, during 1971, operated a home building company known as Graves Construction Company. Included among his customers were persons who sought FHA financing pursuant to section 235 of the National Housing Act of 1968, which applied only to low income families meeting certain standards. Prior to February or March, 1971, appellee Graves did not accept as potential customers any applicants who were unable to furnish the required $200 down payment.[2] Graves later discovered that persons whom his firm had rejected had obtained FHA-approved financing with rival builders only a short time after his firm had rejected them. He complained to the local FHA officials about this practice, but no action was taken by them in response.

At this point, Graves exercised self help to protect his interests in the 235 program. After making inquiries of several individuals who had been approved by other builders, he secured approximately 75 affidavits from home buyers who had not furnished the builder with the requisite $200 down payment or had otherwise failed to comply with applicable FHA regulations. When confronted with these statements, the FHA officials responded that the absence of the down payments was unimportant and that any of the FHA requirements could be waived.

Thereafter, appellee began accepting customers for FHA approved housing even though they did not have the required $200 down payment. The applications forwarded to FHA for these customers contained false statements that the down payment was available or had been paid. In defense of his actions, Graves testified at the pretrial hearing, taking the position that he

---

1. The indictment alleged violations of 18 U.S.C. §§ 371, 1010 and 2.

2. Prior to that time appellee Graves complied fully with FHA regulations each time he submitted to FHA a customer's application for mortgage insurance under section 235. Among the requirements was the furnishing of a statement that the applicant had available for a down payment or had paid a minimum of $200 of unborrowed money.

was guilty of no wrongdoing because FHA officials had sanctioned his practices and those of his competitors.

## II. Did the Appellees' Motion Present a Jury Question?

█ The appellant United States first presents the threshold question whether the district court erred by entertaining before trial the appellees' motion to dismiss on the ground of governmental misconduct. Since the defense is akin to entrapment, the Government argues, the question should have been presented to the jury for consideration. The appellees counter with the argument that an allegation of governmental misconduct is distinguishable from an entrapment defense in terms of the proof required. They contend that the focus of an entrapment defense is the predisposition of the defendant to commit the crime, whereas the focus in a governmental misconduct case is solely upon the actions of the government agents. They contend further that their motion to dismiss was "capable of determination without the trial of the general issue," as contemplated by Rule 12(b), Fed.R.Crim.P., thereby permitting its pretrial disposition by the court.

This case does not present what might be described as a "classic" entrapment defense. In the typical entrapment situation the defendant alleges that law enforcement officers have enticed him to commit an unlawful act which he had no predisposition to commit. In such a case, the entrapment defense "focus[es] on the intent or predisposition of the defendant to commit the crime," *United States v. Russell*, 411 U.S. 423, 429, 93 S.Ct. 1637, 1641, 36 L.Ed.2d 366 (1973), rather than upon the conduct of the Government's agents. In the absence of a conclusive showing, this "subjective" approach[3] permits the jury to determine as a question of fact the defendant's predisposition to commit the crime.

Thus, the question is for the jury, unless the evidence is so clear and convincing that it can be passed on by the trial judge as a matter of law. *Sherman v. United States*, 356 U.S. 369, 377, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Coronado v. United States*, 266 F.2d 719 (5th Cir. 1959) *cert. denied*, 361 U.S. 851, 80 S.Ct. 112, 4 L.Ed.2d 90 (1959). In *Sherman* the court stated as follows:

Furthermore, it was the position of Mr. Justice Roberts that the factual issue of entrapment—now limited to the question of what the government agents did—should be decided by the judge, not the jury. Not only was this rejected by the Court in *Sorrells*, [*Sorrells v. U. S.*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413] but where the issue has been presented to them, the Courts of Appeals have since *Sorrells* unanimously concluded that unless it can be decided as a matter of law, *the issue of whether a defendant has been entrapped is for the jury as part of its function of determining the guilt or innocence of the accused.*

356 U.S. at 377, 78 S.Ct. at 823 (footnote omitted) (emphasis supplied).

It has also been said that the "issue of entrapment is a question for the jury unless as matter of law the defendant has established beyond a reasonable doubt that he was unlawfully entrapped." *Goss v. United States*, 376 F.2d 812, 813 (5th Cir. 1967) (per curiam). The notion that entrapment is generally a question for the jury finds support in Rule 12(b). The defendant's predisposition to commit an unlawful act will seldom be "capable of determination without the trial of the general issue."

In the instant case, however, the appellees do not assert a classic entrapment defense, *i. e.*, they do not argue that the government encouraged criminal acts in order to obtain a prosecution. Rather, they argue that the FHA officials were so involved in the corruption alleged that the law enforcement officials, representing an altogether different agency of government, should be precluded from bringing this prosecution.

---

**3.** That the proper focus of a classic entrapment defense is upon the defendant's predisposition, rather than the conduct of the Government, was most recently reaffirmed in *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976).

Although the appellees perfunctorily assert the lack of any predisposition to commit the offenses alleged, the core of their entire defense is the alleged misconduct of FHA officials. Their motion presented the question whether this conduct violated due process principles, as suggested in *Russell, supra*, to such an extent that judicial processes could not be invoked against them. Since their defense was predicated entirely on alleged governmental misconduct, and not upon the subjective predisposition of the appellees, it was an appropriate question for the court to resolve on a pretrial motion. To paraphrase Rule 12(b), the question presented could be answered without trial of the general issue. Moreover, the issue raised in appellees' pretrial motion was essentially a question of law, namely, whether the conduct of the FHA officials constituted outrageous governmental misconduct within the meaning of *Russell, supra* and *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). Thus, it was properly a question for the court and not the jury.

Although this is a question of first impression in our Circuit, we note that the Eighth Circuit has adopted a rule substantially similar to that fashioned today. In *United States v. Quinn*, 543 F.2d 640 (8th Cir. 1976), the court affirmed the trial court's refusal to submit to the jury that aspect of the defendant's entrapment defense alleging outrageous governmental misconduct:

> Whether a person has been entrapped in [the conventional] sense of the term is ordinarily a question of fact for the jury with the burden being on the government to prove an absence of entrapment. In the instant case, as we have seen, the factual aspect of the defendant's claim of entrapment was submitted to the jury, and the jury resolved it adversely to the defendant.
>
> Recent cases have recognized, however, that apart from any question of predisposition of a defendant to commit the offense in question, governmental participation may be so outrageous or fundamentally unfair as to deprive the defendant of due process of law or to move the courts in the exercise of their supervisory jurisdiction over the administration of criminal justice to hold that the defendant was "entrapped" as a matter of law. . . . (citations omitted) *A claim of entrapment on the basis of outrageous government involvement does not present any question for a jury to decide but solely a question of law for the court.* Thus, the district court did not err in refusing to submit that aspect of the defendant's entrapment defense to the jury.

543 F.2d at 647–48 (emphasis supplied) (citation omitted).

Despite the court's refusal to give the governmental misconduct instruction, it permitted the defendant's "classic" entrapment defense to go to the jury. Hence, the court drew the distinction we make today between the subjective predisposition question in a typical entrapment case and the legal question presented by a governmental misconduct defense. A plurality of the Supreme Court also has concluded that the governmental misconduct theory of entrapment is not a jury question. In *Hampton, supra*, five justices agreed that under *Russell, supra*, a jury instruction encompassing such a defense was improper.[4] We therefore conclude that it was proper for the

---

4. The defendant in that case did not request a standard entrapment instruction, but he did request the following:

> The defendant asserts that he was the victim of entrapment as to the crimes charged in the indictment.
>
> If you find that the defendant's sales of narcotics were sales of narcotics supplied to him by an informer in the employ of or acting on behalf of the government, then you must acquit the defendant because the law as a matter of policy forbids his conviction in such a case.
>
> Furthermore, under this particular defense, you need not consider the predisposition of the defendant to commit the offense charged, because if the governmental involvement through its informer reached the point that I have defined in your own minds, then the predisposition of the defendant would not matter.

district court to entertain the appellees' pretrial motion to dismiss on the ground of governmental misconduct.

### III. *Did the Appellees Demonstrate "Entrapment as a Matter of Law?"*

■ Upon the Government's failure to present rebuttal testimony during the pretrial hearing, the district court held that *United States v. Bueno*, 447 F.2d 903 (5th Cir. 1971), *cert. denied*, 411 U.S. 949, 93 S.Ct. 1931, 36 L.Ed.2d 411 (1973), was authority for dismissal of the indictment. In *Bueno* this court held that entrapment exists as a matter of law where a defendant sells contraband to one Government agent that has been furnished to him for distribution purposes by another Government agent or informer. Furthermore, we held that where a defendant has testified to facts tending to establish such a defense, the government may not rely on weaknesses in the defense, but must come forward with contrary proof. If the Government produces evidence that contradicts the defendant's testimony, the case should be submitted to the jury with proper instructions.

Since in the instant case the Government declined to present evidence to rebut the governmental misconduct defense, we must decide whether the district court was correct in holding that *Bueno* governs this case.

At the outset, we must accept this court's prior determination that *Bueno* remained valid after the Supreme Court's decision in *Russell, supra*. In *United States v. Workopich*, 479 F.2d 1142 (5th Cir. 1973), we noted that the Government in *Russell* had supplied the defendant with an ingredient that was itself legal, harmless and lawfully ob-

tainable but was used to manufacture contraband. In contrast, the unrefuted testimony in *Bueno* established that the Government supplied the contraband itself. Since in *Workopich* the Government furnished United States currency that was legal in itself, the court determined that *Russell* rather than *Bueno* controlled.

In *United States v. Oquendo*, 490 F.2d 161 (5th Cir. 1974), the court also concluded that *Bueno* remained viable after *Russell*. Thus, even after *Russell*, this circuit applied the rule that where entrapment is an issue, the defendant may be acquitted for lack of predisposition, or, even though disposed, where one undercover agent supplies him with the contraband which he sells to another agent. *See United States v. Mosley*, 496 F.2d 1012 (5th Cir. 1974). Subsequent to the *Russell* decision, however, the Supreme Court decided *United States v. Hampton, supra*, in which a plurality[5] of the court held that a classic entrapment defense is never available to a defendant who was predisposed to commit the crime charged. Nonetheless, five justices agreed that a court, in its supervisory capacity or under due process principles, could conceivably bar a conviction of a predisposed defendant because of outrageous police conduct.[6] Thus, the vitality of *Bueno* has again become questionable after *Hampton*.

Two previous panels of this court have declined to decide whether *Hampton* eliminated the so-called *Bueno* defense. In *United States v. Puma*, 548 F.2d 508 (5th Cir. 1977) the court stated as follows:

> Without discussing what vitality, if any, *Bueno* has in the wake of *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), we find the instant

---

**5.** See plurality opinion of Mr. Justice Rehnquist, in which Chief Justice Burger and Mr. Justice White joined, and the concurring opinion of Mr. Justice Powell, with whom Mr. Justice Blackmun joined. Justice Powell stated that "[he] agree[d] with the plurality that Russell definitively construed the defense of "entrapment" to be focused on the question of predisposition. "Entrapment" should now be employed as a term of art limited to that concept. (citation omitted). *This does not mean, however, that the defense of entrapment neces-*

sarily is the only doctrine relevant to cases in which the Government has encouraged or otherwise acted in concert with the defendant. 425 U.S. 486 n. 2, 96 S.Ct. 1648 (1976) (Powell, concurring).

**6.** See the concurring opinion of Mr. Justice Powell, with whom Mr. Justice Blackmun joined, and the dissenting opinion of Mr. Justice Brennan, with whom Mr. Justice Stewart and Mr. Justice Marshall concurred.

case clearly distinguishable. The per se rule of *Bueno* was called for because the offenses for which conviction was obtained were made possible "through the creative activity of the government. The Defendant would not have had the heroin to sell if it had not been purchased by the Informer." 447 F.2d at 906. Here, on the other hand, the DEA became involved after the conspiracy had begun. The conspiracy was not instigated by the "creative activity of the government." The DEA only allowed the conspiracy to play itself out until the conspirators could be ascertained and apprehended. 548 F.2d at 510.

Subsequently, the court hinted, but did not decide, that *Hampton* may have extirpated *Bueno*:

> The Court's decision in *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), handed down after the trial of this case, may well have eliminated the *Bueno* defense. In *Bueno* the Court found entrapment as a matter of law when unrebutted testimony showed that a Government informer had supplied illegal drugs to a defendant who then sold them to a Government agent. In that "full circle" transaction, the evil was
>> the government buying heroin from itself, through an intermediary, the defendant, and then charging him with the crime.
> 447 F.2d at 905. *Bueno* was questioned after the Supreme Court's decision approving something akin to full circle conduct in *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). This Circuit, however, distinguished *Russell* on the ground that the substance supplied in *Russell* was legal, and was only one ingredient of the drugs the

Government agent purchased. *United States v. Oquendo*, 490 F.2d 161, 163 (5th Cir. 1974). *Hampton*, however, rejected that distinction and found no entrapment "per se" even though a full circle transfer of illegal drugs had taken place.
*United States v. Evers*, 552 F.2d 1119, No. 76–1755 (5th Cir. 1977).

In *Evers* the court expressed doubt whether the defendant ever had a *Bueno* defense since his purchase of illegal drugs from a Government agent had not been followed by a sale of the drugs to another agent.[7]

We too find it unnecessary to decide whether *Bueno* survived *Hampton*. Whatever the fate of *Bueno*, it is now clear that the expression "entrapment as a matter of law," as used in that case, has become a misnomer with respect to predisposed defendants. There is still available in appropriate cases a governmental misconduct defense grounded on the dual principles of due process and the supervisory powers of the court, but such a defense does not fall within the narrow confines of "entrapment" as that term has been explicated in *Russell* and *Hampton*.

In light of the foregoing discussion, we proceed to an analysis of the instant case. The district court dismissed the indictment because the Government refused to rebut the defendant's governmental misconduct defense. As indicated above, that procedure has been followed in this Circuit when the defendant establishes the factual situation presented in *Bueno* and the Government fails to rebut the defendant's allegations. The facts of the instant case, however, present none of the abuses addressed by the *Bueno* rule. There is no indication that the FHA employees here induced Graves to commit unlawful acts for the

---

**7.** The court stated in pertinent part as follows:

> The cases in this Circuit following *Bueno* and finding entrapment as a matter of law have been "full circle" cases. *United States v. Gomez-Rojas*, 507 F.2d 1213 (5th Cir.), cert. denied, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975); *United States v. Mosley*, 496 F.2d 1012 (5th Cir. 1974); *United States v. Oquendo*, 490 F.2d 161 (5th Cir. 1974). While at least one federal district court has

held a "half circle" to constitute entrapment, *United States v. Chisum*, 312 F.Supp. 1307 (C.D.Cal.1970), and another Circuit has suggested *Bueno* would apply to "half circle" cases, *United States v. Jett*, 491 F.2d 1078, 1081 (1st Cir. 1974), there is considerable doubt that defendants ever had a *Bueno* defense, especially after the decision in *Russell*. *United States v. Evers*, No. 76–1755, 552 F.2d at 1122 (5th Cir. 1977).

purpose of prosecuting him for those acts. They acted in concert with him, but he did not become immune from prosecution because they condoned or even encouraged his unlawful activity. Were we to uphold the appellees' defense, anyone dealing with corrupt government bureaucrats could expect to join them in crime without fear of prosecution. Hence, to the extent that *Bueno* is still valid, appellees did not even fall within its protective wall.

In addition, we conclude that this is not the case presaged by the Supreme Court when it stated: "We may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction, cf. *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)."

We can discern no due process rights of the appellees which were offended by this prosecution. In *Hampton*, the Supreme Court made the following observation, which applies with equal force to this case:

> The limitations of the Due Process Clause of the Fifth Amendment and of those portions of the Bill of Rights which it has been held to incorporate, come into play only when the government activity in question violates some protected right of the *defendant*. Here, as we have noted, the police, the government informer, and the defendant acted in concert with one another. If the result of the governmental activity is to "implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission, . . ." *Sorrells, supra,* 287 U.S., at 442, 53 S.Ct. [210] at 221, 77 L.Ed.2d, at 417, the defendant is protected by the defense of entrapment. If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law. See *O'Shea v. Littleton*, 414 U.S. 488, 503, 94 S.Ct. 669, 679, 38 L.Ed.2d 674, 687

(1974); *Imbler v. Pachtman*, 424 U.S. 409, 428–429, 96 S.Ct. 984, 994, 47 L.Ed.2d 128 (1975). But the police conduct here no more deprived defendant of any right secured to him by the United States Constitution than did the police conduct in *Russell* deprive Russell of any rights. (emphasis in original).

425 U.S. at 490, 96 S.Ct. at 1650.

Moreover, we do not believe that the type of conduct by FHA officials alleged in this case requires this court, as suggested in *Hampton,* to exercise its supervisory powers to bar conviction.

The appellees not only failed to establish the factual predicate required for a *Bueno* defense, i. e., a "full circle" sale of contraband, they raised the novel contention that the defense of "outrageous governmental misconduct" applies to governmental employees outside the field of law enforcement. Here, the inducements were alleged to have been made by individuals employed by the government in a capacity completely unrelated to criminal law enforcement. The FHA officials had no authority with respect to enforcement of criminal laws, and their actions were not undertaken for the purpose of prosecuting appellees.

The appellees cite three cases for the proposition that a defendant may assert an entrapment defense against government employees who are not law enforcement officers: *United States v. Tatar*, 439 F.2d 1300 (9th Cir. 1971); *cert. denied*, 404 U.S. 866, 92 S.Ct. 69, 30 L.Ed.2d 109 (1971); *United States v. Kabot*, 295 F.2d 848 (2d Cir. 1961), *cert. denied*, 369 U.S. 803, 82 S.Ct. 641, 7 L.Ed.2d 550 (1962); *Lunsford v. United States*, 200 F.2d 237 (10th Cir. 1952). In each of these cases, taxpayers had attempted to procure favorable determination of their tax liability by bribing revenue agents who were auditing their returns. The agents all reported the incidents to their superiors and agreed to cooperate in efforts to obtain evidence of bribery. In all three cases no entrapment was found, and in *Lunsford* the entrapment charge given by the trial court was declared by the Tenth Circuit as "plain, understandable lan-

**1326**

guage." None of these cases considered the issue of whether entrapment could be based upon the conduct of the revenue agents, but it is clear that the agents were attempting to obtain evidence for use in a criminal prosecution.

The FHA officials here were acting in no such capacity. Unlike the agents in the trilogy of cases cited by appellees, the government employees in this case condoned and encouraged the unlawful practices of the appellees and others. The prosecution of the appellees occurred despite their efforts and not because of any "entrapment" or governmental misconduct affecting the rights of the appellees.

We are aware that inducement from a private citizen cannot be deemed sufficient to support a claim of entrapment. *United States v. Maddox*, 492 F.2d 104 (5th Cir. 1976), *cert. denied*, 419 U.S. 851, 95 S.Ct. 92, 42 L.Ed.2d 82 (1974). It is likewise apparent that entrapment can occur as a result of efforts of informers who are merely private citizens but acting under governmental direction. *See United States v. Groessel*, 440 F.2d 602 n. 1 (5th Cir. 1971), *cert. denied*, 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971), citing *Sherman v. United States*, 356 U.S. 369, 373–74, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). Where a government informant is acting in the capacity of a law enforcement officer, however, his actions must be governed by the entrapment defense. Since the FHA officials here were disregarding the law, and not enforcing it, such a case is inapposite to our inquiry.

REVERSED and REMANDED.