UNITED STATES of America, Plaintiff-Appellee,

v.

Paul L. MONTGOMERY, a/k/a Kenneth Selvester Watson, Defendant-Appellant.

No. 76–3219.

United States Court of Appeals, Fifth Circuit.

June 24, 1977.

Rehearing Denied Aug. 29, 1977.

See 558 F.2d 311.

Harry Lee Hudspeth, El Paso, Tex., for defendant-appellant.

John E. Clark, U. S. Atty., San Antonio, Tex., Frank B. Walker, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before TUTTLE, GOLDBERG and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Paul L. Montgomery appeals his conviction both for conspiracy and the substantive offense of possession of five and one-quarter pounds of heroin with the intent to distribute. He urges that the evidence was insufficient to establish a conspiracy and further that the heroin was discovered as a result of an illegal search. We affirm.

Drug Enforcement Administration Special Agent Ruric Staton received on April 20, 1976 information from a confidential informant concerning a black man and woman who would register at an El Paso Rodeway Inn, intending during their stay to procure a quantity of heroin. The only description of the two was that the male would have gray hair and a beard and would be wearing a hat similar to a sailor's cap turned inside out. Agent Staton placed the Rodeway Inn under surveillance and discovered that a couple meeting the given description were staying in a room registered under the name of Ken Watson. Watson was later determined to be an alias for Montgomery and his companion was learned to be Ruby Swartz. On April 21, Agent Staton was joined at the Rodeway Inn by Customs Air Detail Agent Ruben Gomez. The joinder of Gomez and Staton at this time was coincidental. The possibility of a connection between this surveillance and Gomez's earlier work was not discovered until later. No proof of the purpose or results of Agent Gomez's previous investigation was offered at trial. Later on the 21st Montgomery and Swartz were seen together with another black, Thomas McGarrity. McGarrity was registered under the alias of Tim McNary. The three were seen together near the pool area, taking pictures of one another and otherwise indicating that they were acquainted.

Agent Gomez overheard a phone call placed by Ruby Swartz in which she stated that she was staying with "Paul." Since Montgomery was known to be her roommate and was registered as Ken Watson, this indicated to the agents that he was using an alias.

Soon after midnight on April 23, Agent Staton received another tip from the same confidential informant which stated that Montgomery, Swartz, and McGarrity would be leaving soon with the heroin, probably that same morning. At approximately 9:00 a.m. McGarrity did leave the motel and was followed to a small private airport near El Paso. The agents also observed Montgomery and Swartz talking at the airport to a person they surmised to be of Mexican descent who was driving an automobile with

license plates the agents thought to be from the Juarez, Mexico area. No items were seen to be transferred from the automobile to the nearby airplane. The unknown individual was allowed to drive away. As the three defendants were boarding the aircraft and about to leave, they were arrested. Montgomery's suitcase taken from the airplane was discovered to contain five and one-quarter pounds of heroin. No heroin was discovered in the luggage or on the persons of Swartz and McGarrity. However, McGarrity was found to have an address book with Montgomery's actual name and Michigan telephone number and address. He also had a notation of Montgomery's alias and his Rodeway Inn room and phone numbers.

■ Although no similar insufficiency is present as to the showing of conspiracy with McGarrity, Montgomery's contention that the evidence is insufficient to demonstrate a conspiracy with Ruby Swartz is well-taken. As the preceding evidentiary recitation has indicated, Swartz was not in any manner connected to the heroin itself. She was present with Montgomery and McGarrity at the Rodeway Inn and stayed in Montgomery's room. She was also a passenger in the airplane in which the heroin was secreted. Such facts prove no more than that Swartz associated with Montgomery. It does not establish she conspired with him. *United States v. Mendez*, 496 F.2d 128 (5th Cir. 1974); *cf. United States v. Sanchez*, 508 F.2d 388 (5th Cir.), *cert. denied*, 423 U.S. 827, 96 S.Ct. 45, 46 L.Ed.2d 44 (1975). Swartz was not shown to have used an alias nor to have known that Montgomery presented a false name or address to the motel.

Perhaps the closest case in this circuit on its facts is *United States v. Evers*, 552 F.2d 1119 (5th Cir. 1977). In *Evers* the proof established that the defendants had both registered at the motel where a drug purchase occurred with false names and addresses; one had a falsified identification card with his picture; the contraband was purchased shortly after the arrival of the two defendants at the motel and was stored in the trunk of the car in front of the room; each was continuously in the other's presence. By the use of an alias each demonstrated guilty knowledge and an intent to deceive. Communal occupancy of a motel room, the only parallel in the present case, is not enough to establish that a conspiracy existed between Montgomery and Swartz. Since we hold that the evidence was insufficient to convict Montgomery for conspiring with Swartz, we need not consider the contention that since the indictment against Swartz was dismissed at the instance of the Government, no prosecution of Montgomery for conspiring with Swartz can be upheld.

However, even though the same count indicted Montgomery for conspiring with both Swartz and McGarrity, the conspiracy conviction can still stand if there exists an adequate evidentiary basis for a finding that a conspiracy existed with McGarrity alone. *United States v. Lance*, 536 F.2d 1065 (5th Cir. 1976); *United States v. Cabrera*, 447 F.2d 956 (5th Cir. 1971). McGarrity's use of an alias, his knowledge of both Montgomery's actual name and address and his alias, coupled with his presence with Montgomery through much of this episode constitute sufficient evidence of conspiracy. *United States v. Evers, supra; see United States v. Reynolds*, 511 F.2d 603 (5th Cir. 1975). The status of Swartz as a conspirator is not the focus of our decision. The evidence that Montgomery conspired with McGarrity was much stronger than the evidence that Montgomery conspired with Swartz. Although we have held that the jury could not have convicted Montgomery for conspiring with Swartz, they could have believed Montgomery conspired with McGarrity. That is enough.

■ The legality of the search of the aircraft is also attacked. It is contended that the tip from an unknown source provided to Agent Staton did not meet the twin tests of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The two-prong *Aguilar-Spinelli* standard requires that before probable cause for a search with

or without a warrant can be said to exist, based on information acquired from a tip, the reliability both of the informant and of his information must be indicated. If the tip itself combined with the officer's knowledge of the informant cannot provide probable cause, a search may still be sustainable if the information supplied consists of such detail or is corroborated from independent sources as to remove the doubt that it is worthy of reliance.

■ At trial, Agent Staton was questioned concerning the unnamed informant:

Q. . . . You testified again in this preliminary hearing that's already been discussed that your confidential informant in this case with respect to whom you're claiming the privilege had furnished prior information in other cases.

A. Yes, sir.

Q. —is that correct? And sometimes that information turned out to be reliable?

A. Yes, sir.

Q. At other times, it wasn't reliable?

A. Well, yes, sir, that has happened many times. A lot of times, probably I wouldn't have known whether it was reliable or not. I couldn't check it out. It might have been something that had already happened or something that was just impossible to check out, especially if it concerned Juarez [Mexico] or something like that.

Q. Had you conducted any searches prior to this case or made any arrests that turned out to be negative based on this informant's information?

A. No, sir.

The traditional statement that the confidential informant had given reliable information in the past that had led to arrests in a named number of instances is obviously not mirrored in this case. *See United States v. Anderson*, 500 F.2d 1311 (5th Cir. 1974). However, Agent Staton testified explicitly concerning an aspect of police work with informant tips that probably is implicit in every situation with any substantial continuity. Often the passage of time will bar verification or a specific agent who

receives a tip lacks the ability to verify it. Agent Staton did state he never found any of this informant's information to be untrustworthy. Although his testimony does not rule out the possibility that the tipster may have given inaccurate information to other agents, Agent Staton's careful, candid testimony read fairly indicates he had no knowledge that the informant had proven unreliable. It shows most clearly that Staton had always found him to be trustworthy. Even though further fact development on this point might have been advantageous to the defense, the informant's substantial reliability was well established.

We now turn to the second *Aguilar-Spinelli* prong which requires that basis be demonstrated for reliance on the information given. In Agent Staton's suppression hearing testimony we find the following exchange:

Q. Now, further, with respect to the informant other than the facts that you have related at this hearing about what he told you, did he tell you anything else that would lead you to know how he got his information?

A. No, sir, I took it that his information c[a]me from overhearing conversation.

This establishes that, other than an inadequate supposition on the part of the agent, there is no basis for determining the source of the informant's knowledge. We must therefore look to see if alternative methods of crediting the tip were revealed.

Where insufficient information about the tip and the tipster is available to justify reliance upon it alone, investigating officers may supplement the tip by surveillance of the subject or corroboration of key elements of the tip from relatively objective sources.

*United States v. Brennan*, 538 F.2d 711, 720 (5th Cir. 1976).

Whether corroboration can be obtained by observing completely innocent conduct or must disclose at least some indication of criminal behavior is in dispute. *See United States v. Tuley*, 546 F.2d 1264, 1269 (5th Cir. 1977) (dissenting opinion); *United*

*States v. Brennan, supra* at 720 n. 11. The *Tuley* dissent takes the position that whether the corroboration of details of the tip indicates criminal behavior is less important than whether the corroboration is of facts not commonly known to the public. It maintains that police observations should disclose that the tipster has "some personal pipeline to the suspect's scheme". *Id.* at 1273. We believe this added concern is met in the present case. Several aspects of the corroboration here exactly meet those of *Tuley.* The informant disclosed accurately to police the place the suspects would be staying and a physical description of one of the individuals (in *Tuley* the analog is the description of the automobile involved). It does not appear from the record that the informant told Agent Staton any of these facts before Swartz and Montgomery actually appeared at the Rodeway Inn. Therefore, they had potentially become facts of some public knowledge prior to the tip. But there was more. The subsequent tip—the one that when corroborated brought probable cause into play even under the standard of the *Tuley* dissent—informed the officers that the suspects would be leaving the motel and departing El Paso on April 23. This creates a more substantial basis for crediting the informant than anything that transpired in *Tuley.* When the agents arrived at the airport and discovered the loading of the airplane, the presence of an individual who appeared to be from Mexico, and the impending departure of all three suspects, the reliability of the tipsters information was properly fixed.

Since the information was supplied by a reliable person and was properly authenticated as reliable, both the probable cause and exigent circumstances questions raised by the defendants are meritless. The information supplied was not finally adequate to support probable cause until the officers saw the attempt to leave El Paso made. At that moment the acquisition of a warrant was impossible. Therefore, the officers acted reasonably in then and there making the search that disclosed Montgomery's guilt.

AFFIRMED.